Hassan A. Zavareei (CA Bar No. 181547)
Sophia J. Goren (CA Bar No. 307971)
Kyra A. Taylor (*pro hac vice* forthcoming)
**TYCKO & ZAVAREEI LLP**
1828 L Street, NW, Suite 1000
Washington, DC  20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
hzavareei@tzlegal.com
sgoren@tzlegal.com
ktaylor@tzlegal.com

Annick Persinger (CA Bar No. 272996)
**TYCKO & ZAVAREEI LLP**
483 Ninth St, Suite 200
Oakland, CA 94607
Telephone: (510) 254-6808
Facsimile: (202) 973-0950
apersinger@tzlegal.com

E. Powell Miller (*pro hac vice* forthcoming)
**The Miller Law Firm, P.C.**
950 West University Drive, Suite 300
Rochester, Michigan 48307
248.841.2200
248.652.2852 *facsimile*
epm@miller.law

Greg F. Coleman (*pro hac vice* forthcoming)
**GREG COLEMAN LAW**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
(865) 247-0080
greg@gregcolemanlaw.com

*Counsel for Plaintiffs and the Proposed Classes*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| DEONN MORGAN, LYDIA ZEPEDA, SOPHIA IVY, KELLY OKOROCHA, and JENNIFER ZIELINSKI, individually and on behalf of themselves and all others similarly situated,<br><br>             Plaintiffs,<br><br>    v.<br><br>Apple Inc.,<br><br>            Defendant. | Case No. 4:17-cv-5277<br><br>(JURY TRIAL DEMANDED)<br><br>**CLASS ACTION COMPLAINT** |

**CLASS ACTION COMPLAINT**

1.      Plaintiffs Deonn Morgan, Lydia Zepeda, Sophia Ivy, Kelly Okorocha, Jennifer Zielinski ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this Class Action Complaint against defendant Apple Inc. ("Apple" or "Defendant") and in support allege as follows:

**NATURE OF THIS ACTION**

2.      Plaintiffs challenge Defendant's actions in connection with their marketing, advertising and sale of the defective Powerbeats 2 and Powerbeats 3 headphones ("Powerbeats").

3.      In widespread advertising and marketing campaigns, Apple touts that its costly Powerbeats (which retail for $199.95) are "**BUILT TO ENDURE**" and are the "**BEST HEADPHONES FOR WORKING OUT."** Apple repeatedly emphasizes that its Powerbeats are "**Sweat & Water Resistant,"** and employs world-famous professional athletes, including LeBron James and Serena Williams, to promote its Powerbeats in commercials as heavy-duty headphones suited for workouts that can withstand rough treatment and exposure to the elements. In numerous places, including the packaging of the headphones, Defendant represents that Powerbeats 2 have a six-hour rechargeable battery and the Powerbeats 3 have a twelve-hour battery life.

4.      But these costly headphones are neither "built to endure" nor "sweat & water resistant" and certainly do not have a battery that lasts for six or twelve hours. Instead, these shoddy headphones contain a design defect that causes the battery life to diminish and eventually stop retaining a charge. Often, after minimal usage, sometimes only days or weeks, the Powerbeats stop accepting a charge and the indicator light blinks red. Then, the Powerbeats will either not power on at all, or will only power on for minutes at a time. Upon information and belief, thousands of users have experienced this identical defect with their Powerbeats after less than a year of use.

5.      Plaintiffs and many consumers like them have all experienced the same defect—rapidly diminishing battery life and eventual failure to retain a charge—after using the Powerbeats during exercise or other light activity. But despite numerous consumer complaints, Apple has not publicly acknowledged the defect or attempted to fix it. Instead, when consumers attempt to take advantage of Apple's one-year warranty and return the Powerbeats for a new pair, Apple sends

replacement Powerbeats that often contain the exact same defect. Many consumers, including Plaintiffs Deonn Morgan, Jennifer Zielinski, Sophia Ivy, and Kelly Okorocha, have been through several pairs of Powerbeats only to experience the same defect each time. Consumers are therefore caught in a vicious cycle: use, malfunction, replacement, repeat.

6.      Apple continues to promote and market its faulty Powerbeats, and continues to profit handsomely from their sale. In so doing, Apple has defrauded the public and cheated its consumers, including Plaintiffs.

7.      The Powerbeats' purportedly long-lasting battery is a material feature of the product. Powerbeats do not work, and are worthless, unless they are able to retain a charge and the batteries of the Powerbeats are able to last for a reasonable amount of time.

8.      Reasonable consumers expect that high-end Bluetooth headphones will continue to function after minimal use. Reasonable consumers, including Plaintiffs, would not have purchased Powerbeats had they known they contained defects that would cause the battery life to rapidly diminish and eventually fail to charge entirely.

9.      As a result of the defect in the Powerbeats, Plaintiffs and the proposed class have suffered damages. They purchased Powerbeats that they would not otherwise have bought had they known of the existence of the defect. Moreover, they bought defective Powerbeats that are not worth the price that they paid.

## THE PARTIES

10.      Plaintiff Jennifer Zielinski is a resident of New Providence, Pennsylvania.

11.      Plaintiff Kelly Okorocha is a resident of Lake Charles, Louisiana.

12.      Plaintiff Sophia Ivy is a resident of Brandon, Florida.

13.      Plaintiff Lydia Zepeda is a resident of Corona, California.

14.      Plaintiff Deonn Morgan is a resident of Oakland, California.

15.      Defendant Apple is a California corporation with its headquarters and principal place of business in Cupertino, California. Apple designs, manufactures and markets a range of personal computers, mobile communication and media devices, portable digital music players, and personal electronics, including headphones. Apple sells its products globally through its retail stores, online

stores, direct sales force, wholesalers, retailers, and value-added resellers. As of January 2016, Apple had over 450 retail stores. In May 2014, Apple bought Beats Music and Beats Electronics for approximately $3 billion. Beats Electronics manufactured popular headphones, speakers, and audio software.

## JURISDICTION AND VENUE

16.     This Court has original jurisdiction over this civil action under 28 U.S.C. § 1332(d) because this action is a class action filed under Rule 23 of the Federal Rules of Civil Procedure, the amount in controversy exceeds $5,000,000 and there are members of the Class who are citizens of a different state than the Defendant Apple.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Apple is a resident of Cupertino, California, which is located in this District. Additionally, venue is proper in this District because Named Plaintiff Deonn Morgan resides and purchased the product at issue in this lawsuit in Oakland, California, a city within this District.

## CLASS ACTION ALLEGATIONS

18.     Plaintiffs bring this action on behalf of themselves and the class defined as follows:

> All persons residing in the United States who purchased Powerbeats 2 or Powerbeats 3 headphones primarily for personal, family or household purposes, and not for resale.

19.     In the alternative, Plaintiffs Deonn Morgan and Lydia Zepeda brings this action on behalf of themselves and the members of a subclass comprised of:

> All persons residing in the State of California who purchased Powerbeats 2 or Powerbeats 3 headphones primarily for personal, family or household purposes, and not for resale.

20.     In the alternative, Plaintiff Jennifer Zielinski brings this action on behalf of herself and the members of a subclass comprised of:

> All persons residing in the State of Pennsylvania who purchased Powerbeats 2 or Powerbeats 3 headphones for primarily personal, family or household purposes, and not for resale.

21.    In the alternative, Plaintiff Kelly Okorocha brings this action on behalf of himself and the members of a subclass comprised of:

> All persons residing in the State of Louisiana who purchased Powerbeats 2 or Powerbeats 3 headphones for primarily personal, family or household purposes, and not for resale.

22.    In the alternative, Plaintiff Ivy Sophia brings this action on behalf of herself and the members of a subclass comprised of:

> All persons residing in the State of Florida who purchased Powerbeats 2 or Powerbeats 3 headphones for primarily personal, family or household purposes, and not for resale.

23.    The questions here are ones of common or general interest class that there is a well-defined community of interest among the class members.  These questions predominate over questions that may affect only individual class members because Apple has acted on grounds generally applicable to the class.  Such common legal or factual questions include, but are not limited to:

a.   Whether the Powerbeats are defective;

b.   Whether the Powerbeats are defectively designed and/or manufactured;

c.   Whether Apple's claim that the Powerbeats are "sweat & water resistant" is deceptive;

d.   Whether Apple's claim that the Powerbeats 2 has a 6 hour rechargeable battery is deceptive;

e.   Whether Apple's claim that the Powerbeats 3 has up to 12 hours of battery life is deceptive;

f.   Whether Apple's claim that the Powerbeats are "BUILT TO ENDURE" is deceptive;

g.   Whether Apple's claim that the Powerbeats are durable enough to withstand "working out" is deceptive;

h.   Whether Apple breached express warranties relating to the Powerbeats;

i.   Whether Apple breached the implied warranty of merchantability relating to the Powerbeats;

j.  Whether Apple was unjustly enriched by receiving moneys in exchange for Powerbeats that were defective;

k.  Whether Apple should be ordered to disgorge all or part of the ill-gotten profits it received from the sale of the defective Powerbeats;

l.  Whether Plaintiffs and the class are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages;

m.  Whether Apple should be enjoined from selling and marketing its defective Powerbeats; and

n.  Whether Apple engaged in unfair, unconscionable, or deceptive trade practices by selling and/or marketing defective Powerbeats.

24.  Members of the class and subclasses are so numerous that joinder is impracticable. While the exact number of class members is unknown to Plaintiffs, it is believed that the class comprises thousands of members geographically disbursed throughout the United States.

25.  It is impracticable to bring Class members' individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender.  The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

26.  Plaintiffs' claims are typical of the members of the class and all subclasses, as all members of the class are similarly affected by Apple's actionable conduct.  Plaintiffs and all members of the class purchased defective Powerbeats—defects that make the Powerbeats worthless. In addition, Apple's conduct that gave rise to the claims of Plaintiffs and members of the class (*i.e.* delivering defective Powerbeats, making false claims with respect to the Powerbeats, and breaching warranties respecting the Powerbeats) is the same for all members of the class.

27.     Plaintiffs will fairly and adequately protect the interests of the class because they have no interests antagonistic to, or in conflict with, the class that Plaintiffs seeks to represent. Furthermore, Plaintiffs have retained counsel experienced and competent in the prosecution of complex class action litigation.

28.     Plaintiffs know of no difficulty to be encountered in this action that would preclude its maintenance as a class action.

29.     Apple has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## **FACTUAL BACKGROUND**

30.     The high-end headphone industry is a huge market, predicted to exceed $25 billion in sales by 2024. From the beginning in 2006, Dr. Dre's Beats headphones have dominated that market. Endorsed by celebrities such as LeBron James and Lady Gaga, Beats headphones catapulted in popularity and quickly became a must-have status symbol. By 2014, the eight-year-old company, Beats Electronics, had seized 60% of the $100-plus headphone market share. Around that time, when asked which headphones they next planned to purchase, 46% of all teens reported they planned to buy Beats. Recognizing the company as a potential source of substantial revenue in a growing market, Apple acquired Beats Music and Beats Electronics for approximately $3 billion in May 2014.

31.     The Powerbeats 2 and Powerbeats 3 are two types of wireless Bluetooth headphones in the Apple/Beats line. LeBron James is, in fact, credited as a co-creator of Powerbeats. And when the company sold to Apple in 2014, Mr. James reportedly received $30 million in cash and stock for his role in developing and promoting the Beats headphones.

32.     The Powerbeats 2 were released in June 2014, and the Powerbeats 3 replaced its older version in October 2016. According to at least one published comparison of the two

1  headphones, "the two [headphones] are virtually identical."[1] Indeed, "[t]hese Beats headphones

2  share almost every feature." *Id.*

3      33.    Apple aggressively markets the Powerbeats 3. On Apple's website, on the "Music

4  Accessories" page, the Powerbeats 3 headphones are the third product listed.



34.    Apple pushed the sale of Powerbeats in conjunction with the sale of its iPhone 7. The

23  iPhone 7—unlike all previous iPhones and unlike every other brand of smartphone sold—does not

24  include a headphone jack and therefore requires the use of Bluetooth headphones. Although Apple

25  unveiled the iPhone 7 in September 2016, and intended to unveil its own Bluetooth headphones, the

---

[1] Lauren Schwahn, *Powerbeats3 Wireless vs. Powerbeats2 Wireless*, Nerdwallet (September 29, 2016)  https://www.nerdwallet.com/blog/shopping/powerbeats3-wireless-vs-powerbeats2-wireless-headphones-comparison/.

CLASS ACTION COMPLAINT

4:17-cv-5277

Airpods, simultaneously, reported manufacturing problems delayed the release of the Airpods until December 2016, causing consumers in the interim to scramble to find a replacement. That replacement was very often Powerbeats, which were sold by Apple and cell phone carriers, including AT&T and Verizon.

35.     Apple's aggressive marketing is effective. As of July 2016, Beats brought in more revenue from Bluetooth headphones than any other company in the market. In terms of revenue, Beats controlled nearly half of the Bluetooth headphone market. And in terms of unit sales, Beats controlled over a quarter of the market.

36.     Beats are also highly profitable for Apple. From Apple's perspective, Beats are a perfect combination: cheap to make, but expensive to buy. By way of example, a recent article in the Motley Fool estimates Beats Solo headphones cost Apple only $16.89 to make—yet they retail for $199.95. **This is a markup of over 1000%.**

37.     Because Beats are cheaply constructed, despite the high price tag, they repeatedly break.

38.     Additionally, Apple misrepresents the amount of time the Powerbeats' battery can work without needing to recharge. Apple represents that both the Powerbeats 2 and the Powerbeats 3 have batteries that can respectively last for 6 to 12 hours of use without recharging.

39.     The Beats' webpage states:

> Powerbeats² Wireless have a rechargeable battery that offers 6 hours of playback time. Average time to fully charge your earphones is 90 minutes.

1

40.     The Powerbeats 2 box states that Powerbeats 2 have a "6 Hour Rechargeable

2  Battery."

3

4



1    41.    Beats' and Apple Store's websites also represent that Powerbeats 3 have batteries

2  that can be used without charging for hours.

3    **Power meets endurance**

4    Bring on the hours of training because Powerbeats3 Wireless are now powered for the long haul

     with the efficiency of the Apple W1 chip. With up to 12 hours of battery life and an optimized

5    design for improved comfort and immersive sound, you're free to push through the most

6    challenging workouts. Sweat and water resistance provides the necessary durability for

     strenuous workouts and weather.

7

8    42.    The front of the Powerbeats 3 box further represents that Powerbeats 3 have a battery

9  that can power up to 12 hours of playback.

10

11

12

13

14    

15

16

17

18

19

20    43.    Despite Apple's and Beat's representations, neither the Powerbeats 2 nor the

21  Powerbeats 3 headphones have a battery that can be consistently used for 6 or 12 hours,

22  respectively, without further charging.

23    44.    In addition to deceptive misrepresentations regarding Powerbeats' battery life, **Apple**

24  **specifically markets Powerbeats as "sporty" and intended for use while working out.**  Apple

25  boasts on the Beats homepage: **"BEST HEADPHONES FOR WORKING OUT:**

26  **POWERBEATS3 WIRELESS."** But those representations are false and misleading because

27  Powerbeats malfunction during exercise in part because they are not sweat or water resistant.

28

45.     Indeed, Apple makes several representations designed to promote the idea that Powerbeats are water and sweat-resistant and can be used while working out. In big bold letters on the Powerbeats 3 homepages, Apple claims: "**Sweat & Water Resistant**." Apple elaborates, "Rain, sweat or shine-these water resistant earphones push you further and handle tough training."

46.     Commercials further reiterate how the Powerbeats 2 are "SWEAT RESISTANT"



Cam's Prayer: My Way featuring Future | Beats by Dre

47.     One of the advertisements actually depicts a user spraying water all over herself (and her Powerbeats) during a workout:



Beats By Dre | Powerbeats3 Wireless |
#GotNoStrings Mashup

48.     Other advertisements show professional athletes drenched in sweat, using their Powerbeats:

"Ain't No Game" by Beats by Dre | Powerbeats2
Wireless

49.     Apple's advertisements of the Powerbeats uniformly emphasize their "sportiness." Apple claims the Powerbeats 2 were "inspired by LeBron James," were "designed with . . . the athlete in mind," and are "sweat and water resistant."

50.     And on the Amazon Powerbeats 2 page, Apple again claims the Powerbeats headphones are meant for workouts:

> Powerbeats² Wireless was designed to defy the ordinary while catapulting athletes towards unparalleled performance. Lightweight and engineered with the power of dual-driver acoustics, the reimagined wireless earphones deliver the premium sound and performance needed to propel you through rigorous workouts.
>
> **BUILT TO ENDURE**
> Don't let sweat stop you. Powerbeats² Wireless is IPX4 sweat and water resistant from the earbud to the tangle-free wrap around cable, with over-molding on the RemoteTalkTM for a no-slip grip when changing volume, switching tracks, and making hands-free

51.     But a virtually unending stream of consumer complaints puts the lie to Apple's advertising. One consumer succinctly summarized the problem:

> These are NOT SWEAT PROOF... Mine stopped working after 6.5 months ... replacement worked for another 4 months ... and got those replaced which lasted 5 months ... warranty expired on replacements after 3 months … so now I'm stuck with a dud ... expected better from Beats !

52.     Indeed, as that consumer rightfully points out, the problem is *not only* that Apple sells a defective product—and that Apple misleadingly and deceptively markets that product as "sweat and water resistant" when it is demonstrably not—it is that Apple attempts to cover up the defect rather than acknowledge or fix it. When consumers complain about the Powerbeats' malfunction, Apple either gives them the run-around, or sends them another pair of headphones under the warranty—which often contain the exact same defect. Several users (including Deonn Morgan, Jennifer Zielinski, Sophia Ivy, and Kelly Okorocha) have gone through multiple pairs of Powerbeats only to experience the exact same defect every time: after minimal use, the Powerbeats fail to maintain a charge.

53.     Contrary to Apple's repeated misrepresentations, neither the Powerbeats 2 nor the Powerbeats 3 were "**BUILT TO ENDURE**." Instead, the Powerbeats' batteries last for shorter and shorter periods of time over the first weeks and months of use, eventually rendering them useless.

1  The Powerbeats contain a common design and/or manufacturing defect that cause them to fail to

2  retain a charge after minimal use, particularly after exercise.

3       54.    As a result of this glaring defect, on Apple's own website from March 23, 2016[2] the

4  Powerbeats 2 headphone received an average of 2 stars out of 5 based on 589 consumers' reviews.

5  Of the 589 reviews, 379 gave the Powerbeats 2 a 1 star rating. Many of those customers complain

6  about the failure to hold a charge and battery defects:

7
8      These work great for 1-4 months. I purchased mine in NOV 2015 and my husbands in DEC 2015. We work out at the gym 2-3 times per week and loved these. My husband's pair

9      stopped working in March 2016 and mine in April 2016. They will not turn on even after appropriately charged. Such as

10      disappointment.

11                    * * *

12
13      Spent close to $300 - after one month it wouldn't charge, it would light but wouldn't turn on. Apple replaced it with another pair, same thing happened to it after 6 weeks! I

14      wanted an exchange for a different brand but they wouldn't do

15      it w/out sending it for repair to beats. Save yourself the headache and do not buy this garbage

16
17                    * * *

18      My wife bought me the Powerbeats2 Wireless headphones last year for my workouts at the gym. Today, I'm on my 4th

19      Powerbeatts2 Wireless headphones, not because I wanted to

20      purchase more, because each one had a power issue within 2-3 months. Ultimately, each of these headphones, which I had to

21      return and request a new one, worked fined for the first few weeks but stopped working after 2 months or so. I believe the

22      sweat-proof design is flawed and the headphones cannot withstand heavy sweating from an intense workout.

23
24                    * * *

25

26  _____

27  [2] March 23, 2016 version of Apple's webpage archived on the Way Back Machine at

28  http://web.archive.org/web/20160323182928/http://www.apple.com/shop/product/MHBE2AM/A/beats-powerbeats2-wireless-in-ear-headphones

These headphones are an enormous waste of money. The first set I purchased worked well for a few months, then would not charge. I tried the recommended fixes (resetting, downloading the beats updater) which did not work. After receiving a replacement set from Apple, the new set lasted for one use. Now I have a $200 pair of non-functioning headphones. At least they look cool.

* * *

I have gone through several pairs of these headphones as they continue to die (will not charge and then will not power up). Each time I have brought them to the Apple Store for repair, and am given a new unit. I use them for air travel and exercise - what they are advertised for... Yet they continue to die after a few week's use. For the price, this is highly frustrating and not worth the investment.

* * *

1 month and they won't turn on. Based on the reviews I have seen here, this is a common problem, but for a quality product that i spent $200 on, I would expect a lot more. Very frustrating.

* * *

These headphones are garbage. I got them and two months later they will charge, or at least show it is charged. They turn on and at exactly 45 seconds cut off.

* * *

 Now on 3rd replacement pair… same story with each, after about a month just stops turning on despite full charge. Once can be put down to chance but three times together with all the other reviews means an inherent flaw…

55.     Consumers have slammed the Powerbeats 3 repeatedly, giving the headphones an average of 1.5 stars out of 5, based on 676 reviews on Apple's website.[3] In fact, 480 out of 676

---

[3] Powerbeats3 Wireless Earphones – Black (September 11, 2017) https://www.apple.com/us-hed/shop/product/ML8V2LL/A/powerbeats3-wireless-earphones-black?fnode=081ea5e3f76c4a3f14bb86ce2703beb8c183ca6d1d1e68b8fd5dc36c280d12408dfc899a77eb2cee26ed3a135692a5fca5991677f954f6a554c46cd3caf41936c73a28ef083fc0794746900f05d7

consumers have given the headphones a one-star rating. (In contrast, the Apple brand AirPods earphones have 557 reviews with only 40 consumers giving the earphones a one star rating.) A common theme emerges among consumers' complaints: the Powerbeats are not sweat resistant and contain a defect causing them to fail to retain a charge.

> I was willing to give them a chance ... God, I was so wrong! 3 pairs later I said "enough is enough, gimme my money back!" The minute you sweat, these headphones DIE. Complete lie that they are sweat and water resistant. They're advertised as working out headphones, utter garbage. I wish they worked, because the sound was actually really good. But the material is rubbish. Apple you should be ashamed. Just disgustingly bad. I would give this a zero star rating. Avoid this product at all costs! Thank me later!

> * * *

> Not worth it at all. I am on my 5th replacement. They work for about a week or two than die and will not power on. Forget the 12 hour life, I get 30-45 minutes out of each charge.

> * * *

> 2 sets died already within the first month. The sweat proof statement is a fat lie.

> * * *

> 4th replacement. I have had to send mine in and were replaced all for exactly the same issue. They just don't charge anymore. Each time it gets replaced with a new one and lasts about 1 or 2 months, then it happens gain. Bad quality product this is.

> * * *

> This product is terrible, it stopped working just after 2 weeks of buying it. It wont [sic] turn on and no light when charged, it's not sweat resistant because if it is it should be still in working order.

> * * *

---

bcd8f6a848f9d54ceaf8faa7b3746fa2fc31c69b2d5986534f4053227860e1ed11b47e15fefc14cf9b9e1
82b03e51bb711aa

I'm in total agreement with all the comments. im [sic] currently waiting for apple to ship me my 3rd pair. same as everyone else... sweat a little and they just die, dont charge, dont connect to my phone...nothing. dont believe the hype.  if these next ones go out on me also, im done with beats!

* * *

My first pair last less than a month before they malfunctioned (wouldn't charge up, couldn't be recognized by laptop). Asked at the retailer whether he'd seen problems with the model. His answer was vague enough to have me a little worried.
2nd pair just died and I have experienced all the various problems mentioned in these posts, most werr recoverable, but as of yesterday they will not power down after charging and so are flat when I want to use them, also not able to pair with phone or recognised by laptop (even is connected by cable). Resetting the unit achieves nothing. i so want these to work but clearly they do not and clearly it is a design flaw. Poorly implemented product. Not sure why Apple is not acting. Class action anyone?

56.    Similarly, on Beats' own website, the Powerbeats 3 headphones have received only a 2.02 out of 5 rating from 125 customers.[4] Again, many of these customers complain vociferously about the same failure to hold a charge and battery defects:

I am a big user of all Apple product, which is why I bought these - but I couldn't be more disappointed in this product. After 10 days of use, the battery completely died and would not hold a charge. Even after trying multiple charge sources/wires. On top of that, the support from Apple to return these was even more off putting. I am embarrassed and disappointed that Apple sells this in their stores - the quality of this item is sub-par at best. I will not be supporting Beats products anymore. First and last time buyer.

* * *

Great product whilst working. However after 6 months of use, they suddenly stopped charging. I would plug the power in and the power light flash's red for about 10 counts and then turns off. I cant get them to power up. I found apple a little complex and slow to get warranty issues fixed in the past, so hoping that this is easier this time. Check

---

[4] Powerbeats3 Wireless (September 11, 2017) https://www.beatsbydre.com/earphones/powerbeats3-wireless.

4:17-cv-5277

> on the web, plenty of people reporting the same issue with the power
> beats ear plugs.

* * *

> I am currently on my second pair which I might add, have stopped
> working. My first pair was great until they would constantly shut off.
> To my surprise the 2nd pair did the same thing. I also had the
> Powerbeats wireless / and they did the exact same thing. I do not
> recommend these if you are using them to work out.

57.     Even editorial reviews of the product have identified the problem. On CNET.com,
for example, the review of the Powerbeats 3 headphones mentions the numerous consumer
complaints:

> One other point to note: we've heard plenty of anecdotal reports from
> owners of the Powerbeats2 Wireless that they weren't the most
> durable in-ear headphones you could buy. The Amazon user rating of
> 3.5 out of 5 stars (from almost 5,000 people) reflects this, too. Beats
> says the new model is more durable, but the company didn't specify
> what's changed on that front.

## THE EXPERIENCES OF THE NAMED PLAINTFFS

**A.     Deonn Morgan**

58.     Deonn Morgan purchased Powerbeats 2 for her teenage son at a Best Buy Store  in
December 2015 for $149.99 before taxes.

59.      Prior to her purchase in December 2015, Ms. Morgan saw commercials for the
Powerbeats headphones in which professional athletes, including LeBron James, were using the
headphones while engaging in rigorous exercise.  She relied on Apple's representations that
Powerbeats were both "sweat & water resistant," "built to endure," and could be used for hours
without recharging. Ms. Morgan purchased her headphones in reliance on these misrepresentations.

60.     Ms. Morgan's First Set of Powerbeats 2 stopped working and became unusable in
less than six months. In May 2016, Ms. Morgan used her Best Buy warranty to return and replace
her defective Powerbeats 2 headphones. Just a few months later, Ms. Morgan's second set of
Powerbeats headphones malfunctioned.  In or around November 2016 Ms. Morgan contacted and

returned her headphones to Apple, who sent her a third pair of Powerbeats headphones. Ms. Morgan's third set of Powerbeats 2 headphones began to malfunction soon after receipt and use.

61.     Had Ms. Morgan known of the Powerbeats' failure to hold a charge and battery defects, she would not have purchased them, or would have paid significantly less for them.

62.     Additionally, had Ms. Morgan known Powerbeats were not "sweat & water resistant," did not have a battery that would last 6 hours, and/or were not "built to endure," she would not have purchased them or would have paid significantly less for them.

**B.     Lydia Zepeda**

63.     Lydia Zepeda purchased her Powerbeats 3 from CostCo in May of 2017 for $149.99 before taxes.

64.     Ms. Zepeda purchased her Powerbeats 3 to listen to music while working out at the gym. She believed Powerbeats 3 would suit that purpose after seeing Apple's representations that the Powerbeats 3 were sweat and water resistant. She also purchased the Powerbeats 3 believing Apple's representations that the Powerbeats 3's batteries could last for 12 hours of use. Ms. Zepeda relied on Apple's misrepresentations regarding the characteristics of the Powerbeats 3 when making her purchase at Costco.

65.     Ms. Zepeda was able to use her headphones for 7 weeks before they began failing to retain a charge, eventually failing to turn on at all.

66.     Ms. Zepeda called Apple to request a replacement pair of headphones, but Apple representatives told her that the headphones were not covered by the manufacturer's warranty. Apple refused to replace the headphones.

67.     Had Ms. Zepeda known of the Powerbeats' failure to hold a charge and battery defects, she would not have purchased them or would have paid significantly less for them.

68.     Additionally, had Ms. Zepeda known Powerbeats were not "sweat & water resistant," did not have a battery that would last 12 hours, and/or were not suitable to use while exercising, she would not have purchased them.

### C.    Sophia Ivy

69.     Sophia Ivy purchased her Powerbeats 2 headphones from the Home Shopping Network in a four part installment plan for $199.95 before taxes in December 2014.

70.     Ms. Ivy purchased the headphones to work out and speak on the phone on a wireless headset. She purchased the Powerbeats 2 under the belief that the headphones were suitable for working out and were durable. Ms. Ivy relied on Apple's misrepresentations that the Powerbeats headphones were sweat and water resistant when deciding to purchase the Powerbeats 2 headphones. She also relied on Apple's representations that the Powerbeats would hold a charge for six hours.

71.     Ms. Ivy's Powerbeats broke after four months of use. In April of 2014, Ms. Ivy's Powerbeats would not hold a charge for longer than a few minutes. Eventually, the headphones would fail to turn on.

72.     Ms. Ivy contacted Apple, who sent her a replacement pair of Powerbeats 2. The replacement Powerbeats 2 failed within 10 months. The replacement Powerbeats 2 failed to hold a charge and would not stay on.

73.     Ms. Ivy received numerous replacement Powerbeats 2 headphones that also failed to work as warranted. Ms. Ivy continued contacting Apple as the numerous replacement Powerbeats 2 headphones Apple sent her continued to fail to charge or would fail to turn on due to a defect in the headphones.

74.     Ms. Ivy requested a refund for her defective Powerbeats 2 headphones, but Apple representatives told her they would only send replacement Powerbeats 2 headphones.

75.     Had Ms. Ivy known that the Powerbeats 2 contained the failure to hold a charge and battery defects, she would not have purchased them or would have paid significantly less for them.

76.     Had Ms. Ivy known Powerbeats 2 were not "sweat & water resistant," did not have a battery that would last 6 hours, and/or were not suitable to use while exercising, she would not have purchased them or would have paid significantly less for them.

### D.   Jennifer Zielinski

77.     Jennifer Zielinski purchased a pair of Powerbeats 2 headphones in April of 2016 from a T-Mobile store for $199.99 before taxes.

78.     Ms. Zielinski purchased the Powerbeats 2 headphones because she wanted a pair of wireless headphones that could withstand sweat from an aerobic workout. Ms. Zielinski relied on Apple's representations that the Powerbeats 2 were sweat and water resistant and were headphones durable enough to withstand rigorous exercise when purchasing the headphones. Ms. Zielinski also relied on Apple's representations that the battery of the Powerbeats 2 could last for six hours when purchasing the headphones.

79.     Within approximately 3 weeks of purchase, Ms. Zielinski's Powerbeats 2 headphones would not charge and would not turn on. Ms. Zielinski returned to the T-Mobile Store and received a replacement pair of Powerbeats 2 headphones.

80.     Within approximately 3 months of receiving the replacement pair of Powerbeats 2, Ms. Zielinski's replacement Powerbeats 2 stopped charging and would not turn on. Ms. Zielinski went to an Apple store, where she received another replacement set of Powerbeats 2s.

81.     Ms. Zielinski received multiple additional replacement Powerbeats 2 headphones from Apple after each would proceed to fail in the same way: failing to hold a charge and eventually failing to turn on.

82.     When Ms. Zielinski requested that Apple honor its one year manufacturer's warranty, Apple representatives told Ms. Zielinski that Powerbeats 2 cannot not withstand heavy sweating.

83.     Had Ms. Zielinski known that the Powerbeats 2 contained the failure to hold a charge and battery defects, she would not have purchased them or paid significantly less for them.

84.     Had Ms. Zielinski known Powerbeats 2 were not "sweat & water resistant," did not have a battery that would last 6 hours, and/or were not suitable to use while exercising, she would not have purchased them or paid significantly less for them.

**E.    Kelly Okorocha**

85.    Kelly Okorocha purchased his Powerbeats 2 from a Best Buy store for $199.99 (before taxes) in March 2013.

86.    Mr. Okorocha purchased his Powerbeats 2 to use while working out. Mr. Okorocha relied on Apple's representations that the headphones were sweat resistant and were durable enough to withstand a workout. Mr. Okorocha also relied on Apple's representations that the battery of the Powerbeats 2 headphones could last for hours.

87.    Within six months, the Powerbeats 2 became defective and would stop holding a charge and/or stop turning on entirely.

88.    Mr. Okorocha contacted Apple, who sent him a pair of replacement Powerbeats 2 in exchange for the defective headphones.

89.    Approximately 4 months later, the replacement headphones stopped holding a charge and/or stopped turning on entirely.

90.    Had Mr. Okorocha known that the Powerbeats 2 contained the failure to hold a charge and battery defects, he would not have purchased them or would have paid significantly less for them.

91.    Had Mr. Okorocha known Powerbeats 2 were not "sweat & water resistant," did not have a battery that would last 6 hours, and/or were not suitable to use while exercising, he would not have purchased them or would have paid significantly less for them.

**<u>CHOICE OF LAW ALLEGATIONS</u>**

92.    Because this Complaint is brought in California, California's choice of law regime governs the state law allegations in this Complaint. Under California's governmental interest/comparative impairment choice of law rules, California law applies to the claims of all Class members, regardless of their state of residence or state of purchase.

93.    Because Apple is headquartered—and made all decisions relevant to these claims—in California, California has a substantial connection to, and materially greater interest in, this the rights, interests, and policies involved in this action than any other state.

94.    Nor would application of California law to Apple and the claims of all Class

members be arbitrary or unfair. Indeed, in the Terms of Service on the Beats website, Apple declares that, "You agree that all matters relating to your access to or use of the Site and/or Service, including all disputes, will be governed by the laws of the United States and by the laws of the State of California without regard to its conflicts of laws provisions." Although the Terms of Service do not directly apply to this dispute—because it does not relate to consumers' access to or use of the Beats website—this provision demonstrates Apple's awareness and agreement that California law should apply to most disputes between consumers and Apple relating to the Beats product line.

95.     Alternatively, Plaintiffs plead state law claims from each respective state where each named plaintiff resides to govern the state subclass each Named Plaintiff represents.

## CAUSES OF ACTION

### A.     EXPRESS WARRANTY CLAIMS

### COUNT I
### (Breach of Express Warranty—Magnuson Moss Warranty Act—
### On Behalf of the Nationwide Class and Each Subclass)

96.     Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

97.     Powerbeats are consumer products as defined in 15 U.S.C. § 2301(1).

98.     Plaintiffs and Class Members are consumers as defined in 15 U.S.C. § 2301(3).

99.     Apple is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

100.     Apple provided Plaintiffs and Class Members with "written warranties" within the meaning of 15 U.S.C. § 2301(6).

101.     Apple breached the express warranty by refusing to honor the express warranty to replace or repair, free of charge, any defective Powerbeats and by instead providing Plaintiffs and the Class with only a temporary fix: new or refurbished Powerbeats which contained the same defect. At no time has Apple offered a permanent or adequate repair or replacement of the defective Powerbeats.

102.     Additionally, by advertising that Powerbeats are "Sweat & Water Resistant," Apple expressly warranted to Plaintiffs and Class members that the Powerbeats would continue to work, even after exposure to moisture.

103.     Moreover by advertising that Powerbeats 2 had a rechargeable battery with 6 hour playback and the Powerbeats 3 had a 12 hour battery life, Apple expressly warranted to Plaintiffs and Class members that the Powerbeats had a battery that would last for hours when fully charged.

104.     Such statements became the basis of the bargain for Plaintiffs and other Class members because such statements are among the facts a reasonable consumer would consider material in the purchase of high-end sport headphones.

105.     Apple breached this express warranty by delivering Powerbeats that do not deliver as promised and fail to withstand minimal amounts of moisture and fail to retain their charge for six or twelve hours.

106.     At the time the Powerbeats were sold, Apple knew of the defects they possessed and offered an express warranty with no intention of honoring said warranties with respect to the known defects.

107.     Despite repeated demands by Plaintiffs and Class Members that Apple repair or replace the defective Powerbeats, Apple has refused to provide a permanent fix. Apple's refusal to provide an adequate repair or replacement violates 15 U.S.C. § 2304.

108.     Apple was afforded a reasonable opportunity to cure its breach of the express warranty, but failed to do so.

109.     As a direct and proximate result of Apple's breach of its express written warranties, Plaintiffs and Class Members have been damaged in an amount to be proven at trial.

**COUNT II**
**(Express Warranty—**
**On Behalf of Nationwide Class, and in the Alternative and the California Subclass)**

110.     Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

111.     Apple's one-year warranty states:

26
CLASS ACTION COMPLAINT

Your Apple-branded or Beats-branded hardware product ("Product") is warranted against defects in materials and workmanship for a period of ONE (1) YEAR from the date of original retail purchase ("Warranty Period") when used in accordance with Apple's user manuals (refer to https://www.apple.com/support/country). Under this warranty, you will be able to direct your claims to Apple even in situations where you purchased the Apple Product from a third party. If a defect arises during the Warranty Period, Apple, at its option will (1) repair the Product at no charge using new parts or parts that are equivalent to new in performance and reliability, (2) exchange the Product with a product with equivalent functionality formed from new and/or previously used parts that are equivalent to new in performance and reliability or with your consent, a product that is at least functionally equivalent to the product it replaces, or (3) refund the original purchase price.

112.   Apple violated this express warranty by repeatedly failing to repair or replace Plaintiffs' defective Powerbeats, and instead providing Plaintiffs and the Class with only a temporary fix: new or used Powerbeats that contained the same defect.

113.   Additionally, by advertising that Powerbeats are "Sweat & Water Resistant," Apple expressly warranted to Plaintiffs and Class members that the Powerbeats would continue to work, even after exposure to moisture.

114.   Furthermore, by advertising that Powerbeats 2 had a rechargeable battery with 6 hour playback and the Powerbeats 3 had a 12 hour battery life, Apple expressly warranted to Plaintiffs and Class members that Powerbeats' battery would last for hours and would not die without the ability to turn on.

115.   Such statements became the basis of the bargain for Plaintiffs and other Class members because such statements are among the facts a reasonable consumer would consider material in the purchase of high-end sport headphones.

116.   Apple breached this express warranty by delivering Powerbeats that do not deliver as promised, do not have a battery that can last 6 or 12 hours, and fail to withstand minimal amounts of moisture.

117.   As a result of the foregoing breaches of express warranty, Plaintiffs and the Class have been damaged in that they purchased Powerbeats that could not perform as warranted; did not receive the benefit of the bargain of their Powerbeats purchase; and did not receive an adequate repair or replacement headphones under Apple's one-year warranty.

118.   Plaintiffs and the class seek all damages permitted by law in an amount to be determined at trial.

## COUNT III
**(In the Alternative, Breach of Express Warranty on Behalf of Pennsylvania Subclass under 13 Pa. Stat. and Cons. Stat. Ann. § 2313 and the Florida Subclass Under Fla. Stat. Ann. § 672.313)**

119.   Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

120.   Apple's one-year warranty states:

> Your Apple-branded or Beats-branded hardware product ("Product") is warranted against defects in materials and workmanship for a period of ONE (1) YEAR from the date of original retail purchase ("Warranty Period") when used in accordance with Apple`s user manuals (refer to https://www.apple.com/support/country). Under this warranty, you will be able to direct your claims to Apple even in situations where you purchased the Apple Product from a third party. If a defect arises during the Warranty Period, Apple, at its option will (1) repair the Product at no charge using new parts or parts that are equivalent to new in performance and reliability, (2) exchange the Product with a product with equivalent functionality formed from new and/or previously used parts that are equivalent to new in performance and reliability or with your consent, a product that is at least functionally equivalent to the product it replaces, or (3) refund the original purchase price.

121.   Apple violated this express warranty by repeatedly failing to repair or replace Plaintiffs' defective Powerbeats, and instead providing Plaintiffs and the Class with only a temporary fix: new or refurbished Powerbeats which contained the same defect.

122.   By advertising that Powerbeats are "Sweat & Water Resistant," Apple expressly warranted to Plaintiffs and Class members that the Powerbeats would continue to work, even after exposure to moisture.

123.   By advertising that Powerbeats 2 had a rechargeable battery with 6 hour playback and the Powerbeats 3 had a 12 hour battery life, Apple expressly warranted to Plaintiffs and Class

4:17-cv-5277

1   members that Powerbeats' battery would last for hours and would not die without the ability to turn

2   on.

3       124.    Such statements became the basis of the bargain for Plaintiffs and other Class

4   members because such statements are among the facts a reasonable consumer would consider

5   material in the purchase of high-end sport headphones.

6       125.    Apple breached this express warranty by delivering Powerbeats that do not deliver as

7   promised, fail to withstand minimal amounts of moisture, and neither has a battery that lasts for

8   hours without recharging.

9       126.    Plaintiffs Sophia Ivy and Jennifer Zielinski relied on Apple's express warranties

10   regarding the characteristics and qualities of the Powerbeats.

11       127.    As a result of the foregoing breaches of express warranty, Plaintiffs and the Class

12   have been damaged in that they purchased Powerbeats that could not perform as warranted; did not

13   receive the benefit of the bargain of their Powerbeats purchase; and did not receive an adequate

14   repair or replacement headphones under Apple's one-year warranty.

15       128.    Plaintiffs and the class seek all damages permitted by law in an amount to be

16   determined at trial.

17       **B.**       **IMPLIED WARRANTY CLAIMS**

18

19   **COUNT IV**
   **(Breach of the California Song-Beverly Act – Implied Warranty of Merchantability—**

20   **On Behalf of Nationwide Class and California Subclass)**

21       129.    Plaintiffs re-allege and incorporate each and every allegation set forth above as if

22   fully written herein.

23       130.    The Powerbeats are a "consumer good" within the meaning of Cal. Civ. Code §

24   1791(a).

25       131.    Plaintiffs and members of the Class are "buyers" within the meaning of Cal. Civ.

26   Code § 1791(b).

27       132.    Apple is a "manufacturer" of the Powerbeats within the meaning Cal. Civ. Code §

28   1791(j).

133.    Apple impliedly warranted to Plaintiffs and Class members that its Powerbeats were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792; however, the Powerbeats do not have the quality that a buyer would reasonably expect, and were therefore not merchantable.

134.    Cal. Civ. Code § 1791.1(a) states:

"Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

(1) Pass without objection in the trade under the contract description;

(2) Are fit for the ordinary purposes for which such goods are used;

(3) Are adequately contained, packaged, and labeled; and

(4) Conform to the promises or affirmations of fact made on the container or label.

135.    The Powerbeats would not pass without objection in the trade because they do not perform as warranted because they fail to maintain a charge after minimal use.

136.    Similarly, the Powerbeats' failure to maintain a charge after minimal use renders them unfit for ordinary purposes for which such goods are used.

137.    The Powerbeats are not adequately contained, packaged, and labeled because the labeling represents that they are sweat & water resistant, which they are not.

138.    Moreover, the Powerbeats are not adequately contained, packaged, and labeled because the labeling represents that they have a battery that can last 6 or 12 hours, when the battery does not last nearly that long.

139.    For the same reason, the Powerbeats do not conform to the promises or affirmations of fact made on the container or label.

140.    Apple thus breached the implied warranty of merchantability.

141.    Notice of breach is not required because Plaintiffs and the other Class members did not purchase their Powerbeats directly from Apple.

142.     As a direct and proximate result of Apple's breach of the implied warranty of merchantability, Plaintiffs and the other Class members did not receive the benefit of their bargain and received goods with a defect that substantially impairs their value to Plaintiffs and Class members. Plaintiffs and Class members were damaged as a result of the defect in the Powerbeats, the product's malfunctioning, and the nonuse of their Powerbeats.

143.     Pursuant to Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiffs and Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Powerbeats or the overpayment or diminution in value of their Powerbeats.

144.     Pursuant to Cal. Civ. Code § 1794, Plaintiffs and the other Class members are entitled to costs and attorneys' fees.

**COUNT V**
**(Violation of 15 U.S.C. § 2301 *et seq.*:  The Magnuson-Moss**
**Warranty Act—Implied Warranty—**
**On Behalf Of the Nationwide Class and All State Subclasses)**

145.     Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

146.     Plaintiffs bring this claim on behalf of the nationwide class and all of the subclasses.

147.     The Powerbeats are "consumer products" within the meaning of 15 U.S.C. § 2301.

148.     Plaintiffs and members of the class are "consumers" within the meaning of 15 U.S.C. § 2301 because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

149.     Apple is a "supplier" of the consumer products to consumers and a "warrantor" within the meaning of 15 U.S.C. § 2301.

150.     Section 2310(d)(1) of Chapter 15 of the United States Code provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

151.    Apple made written and implied warranties regarding the Powerbeats to Plaintiffs and members of the class within the meaning of 15 U.S.C. § 2301. Apple provided Plaintiffs and other class members with an implied warranty of merchantability within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).

152.    Apple breached the implied warranty of merchantability because the Powerbeats were not fit for the ordinary purpose in which such goods are used.  Specifically, the Powerbeats contained a defect that caused them not to retain a charge, particularly after use during exercise, rendering the Powerbeats unusable for their ordinary purpose.

153.    Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give Apple notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

154.    Plaintiffs' individual claims place into controversy an amount equal to or exceeding $25.00. The amount in controversy of this entire action exceeds the sum of $50,000.00, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit. Plaintiffs, individually and on behalf of the other Class members, seek all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial.

155.    In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class members in connection with the commencement and prosecution of this action.

156.    Further, Plaintiffs and the Class are also entitled to equitable relief under 15 U.S.C. § 2310(d)(1) and damages as a result of Apple's violation of their written and/or implied warranties.

## COUNT VI
**(In the Alternative Implied Warranty of Merchantability on Behalf of the State Subclasses for Pennsylvania Under 13 Pa. Con. Stat. Ann. § 2314 and Florida Under Fla. Stat. Ann. § 672.314)**

157.   Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

158.   Apple is a "merchant" of headphones because Apple is a retail seller of electronic products and accessories and routinely sell a wide variety of headphones.

159.   Apple is also the manufacturer of Powerbeats headphones.

160.   Plaintiffs and members of the Class are "buyers" of the Powerbeats headphones because they purchased their headphones for personal use.

161.   Apple impliedly warranted to Plaintiffs and Class members that its Powerbeats were "merchantable" within the common meaning of "merchantability" expressed in 13 Pa. Con. Stat. Ann. § 2314 and Fla. Stat. Ann. §672.314.

162.   13 Pa. Con. Stat. Ann. § 2314 and Fla. Stat. Ann. §672.314 require that merchantable goods:

(1) pass without objection in the trade under the contract description; and
(2) in the case of fungible goods, are of fair average quality within the description; and
(3) are fit for the ordinary purposes for which such goods are used; and
(4) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
(5) are adequately contained, packaged, and labeled as the agreement may require; and
(6) conform to the promises or affirmations of fact made on the container or label if any.

163.   The Powerbeats would not pass without objection in the trade because they do not perform as warranted—they fail to maintain a charge after minimal use.

164.   Similarly, the Powerbeats' failure to maintain a charge after minimal use renders them unfit for ordinary purposes for which such goods are used.

165.   The Powerbeats are not adequately contained, packaged, and labeled because the labeling represents that they are sweat & water resistant and have a battery which can last for up to 6 or 12 hours when the Powerbeats are in use, which are qualities they do not have.

166.   For the same reason, the Powerbeats do not conform to the promises or affirmations of fact made on the container or label.

1    167.    Apple thus breached the implied warranty of merchantability.

2    168.    Notice of breach is not required because Plaintiffs and the other Class members did

3    not purchase their Powerbeats directly from Apple.

4    169.    As a direct and proximate result of Apple's breach of the implied warranty of

5    merchantability, Plaintiffs and the other Class members did not receive the benefit of their bargain

6    and received goods with a defect that substantially impairs their value to Plaintiffs and Class

7    members. Plaintiffs and Class members were damaged as a result of the defect in the Powerbeats,

8    the product's malfunctioning, and the nonuse of their Powerbeats.

9

10    **COUNT VII**
**(In the Alternative, Breach of Warranty Against Redhibitory Defects—**
11    **On Behalf of the Louisiana Subclass)**

12    170.    Plaintiffs re-allege and incorporate each and every allegation set forth above as if

13    fully written herein.

14    171.    La. Civ. Code. Ann. art. 2520 states:

15    A defect is redhibitory when it renders the thing useless, or its use so inconvenient
that it must be presumed that a buyer would not have bought the thing had he known
16    of the defect. The existence of such a defect gives a buyer the right to obtain rescission
of the sale.
17

18    A defect is redhibitory also when, without rendering the thing totally useless, it
diminishes its usefulness or its value so that it must be presumed that a buyer would
19    still have bought it but for a lesser price. The existence of such a defect limits the
right of a buyer to a reduction of the price.
20

21    172.    Plaintiffs' and class members' headphones were rendered useless when the defect

22    within the Powerbeats headphones prevented them from turning on before a year of use had

23    elapsed.

24    173.    Had Plaintiff Okorocha and class members known that the Powerbeats' defect could

25    stop them from being turned on after being used for a year or less, Plaintiff and class members

26    would have only purchased the Powerbeats at a lesser fee, if at all.

27    174.    Under La. Civ. Code. Ann. art. 2545, "A seller who knows that the thing he sells has

28    a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it

does not have, is liable to the buyer for the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees" minus credit for the use of the redhibitory product.

175.    Apple is a seller of Powerbeats presumed to be aware of their redhibitory defects under Louisiana law. Pursuant to La. Civ. Code. Ann. art. 2545, Apple "is deemed to know that the thing [it] sells has a redhibitory defect when [it] is a manufacturer of that thing."

176.    Apple breached their warranty against redhibitory products when it sold Powerbeats that would fail to turn on within one year of use or less.

177.    Plaintiffs and the class seek all damages permitted by law in an amount to be determined at trial.

### C.    CONSUMER PROTECTION STATUTE CLAIMS

### COUNT VIII
### (Violation Of the CLRA—On Behalf of Nationwide Class)

178.    Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

179.    Apple is a "person" as defined by the CLRA. Cal. Civ. Code § 1761(c).

180.    Plaintiffs and Class members are "consumers" within the meaning of the CLRA, as defined by Cal. Civ. Code § 1761(d), who purchased one or more pairs of Powerbeats.

181.    The CLRA prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770(a).

182.    Apple has engaged in unfair or deceptive trade practices that violated Cal. Civ. Code § 1770(a), as described above and below, by, among other things, failing to disclose the defective nature of the Powerbeats, representing that the Powerbeats had characteristics and benefits that they do not have (e.g., durability, endurance, battery life, that they are sweat and water resistant, the ability to use during workouts), representing that the Powerbeats were of a particular standard,

1 quality, or grade when they were of another, and advertising Powerbeats with the intent not to sell

2 them as advertised. *See* Cal. Civ. Code §§ 1770(a)(5), (a)(7), (a)(9).

3      183.    Apple knew, should have known, or was reckless in not knowing that its products

4 did not have the qualities, characteristics, and functions it represented, warranted, and advertised

5 them to have.

6      184.    Plaintiffs and Class members are reasonable consumers who expected that their

7 Powerbeats would work as represented.

8      185.    As a result of Apple's conduct and unfair or deceptive acts or practices, Plaintiffs

9 and Class members suffered actual damages in that the Powerbeats do not function as represented

10 and are not worth the amount paid and Apple has deprived Plaintiffs and Class members the benefit

11 of the bargain.

12      186.    Plaintiffs and the Class seek an order enjoining Defendant's unfair or deceptive acts

13 or practices, equitable relief, an award of attorneys' fees and costs under Cal. Civ. Code § 1780(e).

14      187.    Pursuant to Section 1782(d) of the CLRA, Plaintiffs reserve the right to amend this

15 Complaint to include a request for damages under the CLRA pursuant to Section 1782(a) of the

16 CLRA within thirty (30) days after the commencement of this cause of action for injunctive relief.

17 *See* Ex. A.

18

19 **COUNT IX**<br>**(Violation Of the UCL—On Behalf of Nationwide Class)**

20      188.    Plaintiffs re-allege and incorporate each and every allegation set forth above as if

21 fully written herein.

22      189.    California Business & Professions Code § 17200 prohibits acts of "unfair

23 competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair,

24 deceptive, untrue or misleading advertising." Apple's conduct related to the sale of its defective

25 Powerbeats violated each of this statute's three prongs.

26      190.    Apple committed an unlawful business act or practice in violation of Cal. Bus. &

27 Prof. Code § 17200, *et seq.*, by their violations of the Consumers Legal Remedies Act, Cal. Civ.

28 Code § 1750, *et seq.*, as set forth above, by the acts and practices set forth in this Complaint.

191.     Apple committed unfair business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, when it sold Powerbeats that contained a defect causing them to fail to maintain a charge after minimal use; when it represented that the Powerbeats withstand sweat and water, when in fact they cannot; and, when in response to requests for replacement Powerbeats under Apple's warranty, Apple sent consumers headphones that contained the same defect.

192.     Apple committed fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, when it affirmatively and knowingly misrepresented that the Powerbeats were durable and would withstand sweat and water, when in fact they cannot; and, when in response to requests for replacement Powerbeats under Apple's warranty, Apple sent consumers headphones that contained the same defect. Apple's representations and concealment of the defect are likely to mislead the public with regard to the true defective nature of the Powerbeats.

193.     As a direct and proximate result of Apple's unfair and deceptive practices, Plaintiffs and Class members suffered and will continue to suffer actual damages.

194.     As a result of its unfair and deceptive conduct, Apple has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiffs and Class members pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17204.

195.     Legal remedy alone will be insufficient to fully redress Plaintiffs' injuries and stop Apple from continuing in its unfair and deceptive conduct. Therefore, Plaintiffs and the Class seek equitable relief, including an order enjoining Apple's unfair or deceptive acts or practices, and an award of attorneys' fees and costs under Cal. Code of Civ. Proc. § 1021.5.

## COUNT X
### (In the Alternative, Violation of Florida Consumer Protection Laws—
### On Behalf of Florida Subclass)

196.     Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

197.     Fla. Stat. Ann. § 501.204(1) prohibits "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

198.     Apple engaged in unfair and deceptive acts in violation of Fla. Stat. Ann. § 501.204

CLASS ACTION COMPLAINT

when Apple represented that the Powerbeats withstand sweat and water, when in fact they cannot; when Apple represented that the Powerbeats have a battery that can last for hours without recharging, when in fact they cannot; and, when in response to requests for replacement Powerbeats under Apple's warranty, Apple sent consumers headphones that contained the same defect.

199.    Plaintiff Sophia Ivy and members of the class relied on Apple's misrepresentations when purchasing her Powerbeats headphones. Had she known that those misrepresentations were false, she and members of the class would not have purchased her Powerbeats headphones.

200.    Plaintiffs and the class seek all damages permitted by law in an amount to be determined at trial.

**COUNT XI**
**(In the Alternative, Violation of Pennsylvania Consumer Protection Laws—**
**On Behalf of Pennsylvania Subclass)**

201.    Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

202.    73 Pa. Stat. Ann. § 201-3 declares "unfair methods of competition" and "unfair or deceptive acts or practices" unlawful. "Unfair methods of competition" and "unfair or deceptive acts or practices" are defined by 73 Pa. Stat. Ann. §202-2(4) as "Representing that goods… have… characteristics… uses, [or] benefits…that they do not have."

203.    Apple engaged in unlawful "unfair or deceptive acts or practices" and violated 73 Pa. Stat. Ann. § 201-3 when it represented that the Powerbeats were water resistant and sweat proof, when in fact they are not; when it represented that Powerbeats had a battery that would retain a charge for hours, when in fact it could not; and when it represented that it would offer a replacement, repair, or refund for defective Powerbeats if the product broke within a year of purchase, when instead it provided similarly defective Powerbeats as a replacements.

204.    73 Pa. Stat. Ann. §201-9.2(a) states:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 31 of this act, may bring a private action to

recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

205.    Plaintiffs and members of the class purchased Powerbeats for their personal use.

206.    Plaintiffs and members of the class suffered an ascertainable loss of money where they purchased Powerbeats under the misconception that the Powerbeats were sweat proof, water resistant, and had a battery that could last for hours without recharging, when in fact they had none of those characteristics.

207.    Plaintiffs and members of the class relied on Apple's misrepresentations regarding the Powerbeats' characteristics when deciding to purchase the headphones. Had they known that the Powerbeats did not possess the characteristics Apple represented it had, they would have paid significantly less for the Powerbeats, if they would have purchased them at all.

208.    As a result, Apple violated 73 Pa. Stat. Ann. § 201-3 and Plaintiffs are entitled to all damages to be determined by law.

**D.    COMMON LAW CLAIMS**

**COUNT XIII**
**(Common Law Fraud—On Behalf of Nationwide Class)**

209.    Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

210.    Apple engaged in fraudulent and deceptive conduct. As described above, Apple's conduct defrauded Plaintiffs and Class members, by intentionally leading them to believe, through affirmative misrepresentations, omissions, suppressions, and concealments of material fact, that the Powerbeats possessed important characteristics that they in fact do not possess—namely that they are sweat and water resistant—and inducing their purchases.

211.    Apple's intentional and material misrepresentations included, among other things, its advertising, marketing materials and messages, and other standardized statements claiming the Powerbeats are designed for use during workouts, and built to withstand sweat and water.

1    212.    The foregoing misrepresentations were uniform across all Class members.

2    213.    The same extensive and widespread advertising campaign was promoted nationwide,

3    and all of the promotional materials contained the same material representations regarding the

4    Powerbeats' ability to be used during exercise and ability to withstand sweat and water.

5    214.    These representations were false, as detailed herein. Apple knew the representations

6    were false when it made them and thereby intended to defraud purchasers.

7    215.    Apple's actions constitute "actual fraud" within the meaning of Cal. Civ. Code §

8    1572 because Apple did the following with the intent to deceive Plaintiffs and Class members and

9    to induce them to enter into their contracts:

10       a. Suggested that the Powerbeats can withstand sweat and water and heavy exercise, even

11       though it knew this to be not true;

12       b. Positively asserted that the Powerbeats are sweat & water resistant in a manner not

13       warranted by the information available to Apple;

14       c. Asserted that Powerbeats were "built to endure" and had a battery that could last for hours

15       without recharging when they knew this to be false;

16       d. Asserted that Powerbeats 2 had a rechargeable battery with 6 hour playback and the

17       Powerbeats 3 had a 12 hour battery life;

18       e. Suppressed the true nature of the Powerbeats' defect from Plaintiffs and Class members;

19       f. Promised it would deliver Powerbeats that could withstand sweat, water, and heavy

20       workouts, with no intention of so doing; and

21       g. Promised it would deliver Powerbeats that could play sound for 6 to 12 hours, with no

22       intention of so doing.

23    216.    Apple's actions, listed above, also constituted "deceit" as defined by Cal. Civ. Code

24    § 1710 because Apple willfully deceived Plaintiffs and Class members with intent to induce them

25    to alter their positions to their detriment by purchasing defective Powerbeats.

26    217.    Apple's fraud and concealment was also uniform across all Class members; Apple

27    concealed from everyone the true nature of the failure to hold a charge and battery defects present

28    in the Powerbeats.

218.    Apple's misrepresentations and omissions were material in that they would affect a reasonable consumer's decision to purchase Powerbeats. A reasonable consumer would not purchase high-end headphones that stop being able to retain a charge after only minimal use.

219.    Apple's intentionally deceptive conduct induced Plaintiffs and Class members to purchase Powerbeats and resulted in harm and damage to them.

220.    Plaintiffs believed and relied upon Apple's misrepresentations and concealment of the true facts. Class members are presumed to have believed and relied upon Apple's misrepresentations and concealment of the true facts because those facts are material to a reasonable consumer's decision to purchase Powerbeats.

221.    As a result of Apple's inducements, Plaintiffs and Class members sustained actual damages including but not limited to receiving a product that fails to perform as promised and not receiving the benefit of the bargain of their Powerbeats' purchases. If Plaintiffs and Class members had known about the defect, they would not have purchased the Powerbeats or would have paid significantly less for them. Apple is therefore liable to Plaintiffs and Class members in an amount to be proven at trial.

222.    Apple's conduct was systematic, repetitious, knowing, intentional, and malicious, and demonstrated a lack of care and reckless disregard for Plaintiffs' and Class members' rights and interests. Apple's conduct thus warrants an assessment of punitive damages under Cal. Civ. Code § 3294 and other applicable states' laws, consistent with the actual harm it has caused, the reprehensibility of its conduct, and the need to punish and deter such conduct.

**COUNT XIV**
**(Negligence—On Behalf of Nationwide Class)**

223.    Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

224.    Apple owed a duty to Plaintiffs and the Class to design, manufacture, market and sell its Powerbeats with reasonable care and in a workmanlike fashion.

225.    Apple breached that duty by designing and/or manufacturing Powerbeats that are defective.

226.   Plaintiffs and members of the Class suffered damages as a result of Apple's breach.

227.   Apple's breach proximately caused damages to Plaintiffs and members of the Class.

## COUNT XV
### (Unjust Enrichment)

228.   Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

229.   Plaintiffs and members of the class conferred a benefit upon Apple.  Namely, Plaintiffs and members of the class paid money to Apple for the Powerbeats.

230.   Apple, however, retained that benefit under circumstances that make it unjust and inequitable for Apple to retain it without paying Plaintiffs and members of the class the value thereof.  Specifically, Apple retained that benefit despite the fact that the Powerbeats were defective.

231.   When purchasing their Powerbeats, Plaintiffs and Class members reasonably believed that the Powerbeats would perform as advertised and as warranted and would continue to work and maintain a charge, even after exercise.

232.   Plaintiffs and Class members received less than what they paid for in that the Powerbeats fail to maintain a charge after minimal use and therefore do not deliver as promised.

233.   Plaintiffs and Class members conferred a benefit on Apple by purchasing the Powerbeats. Had Plaintiffs and Class members known about Powerbeats' defect—which resulted in the Powerbeats becoming unusable within one year of purchase—they would not have purchased the Powerbeats or would have paid significantly less for them.

234.   Apple should therefore be required to disgorge all profits, benefits, and other such compensation it obtained through its wrongful conduct.

## REQUESTS FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court:

A.   Certify the Class pursuant to California Code of Civil Procedure Section 382;

B.     Award damages, including compensatory, exemplary, and statutory damages, to Plaintiffs and the class in an amount to be determined at trial;

C.     Grant restitution to Plaintiffs and the class and require Apple to disgorge its ill-gotten gains;

D.     Permanently enjoin Apple from engaging in the wrongful and unlawful conduct alleged herein;

E.     Award punitive damages, to the extent permitted by law, in an amount to be determined at trial;

F.     Award Plaintiffs and the class their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

G.     Award Plaintiffs and the class pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

H.     Award all such further relief as the Court deems appropriate.

## JURY DEMAND

Plaintiffs hereby demands a jury trial in the instant action.

Dated:  September 12, 2017                Respectfully submitted,

Hassan A. Zavareei (CA Bar No. 181547)
Sophia J. Goren (CA Bar No. 307971)
Kyra A. Taylor (*pro hac vice* forthcoming)
**TYCKO & ZAVAREEI LLP**
1828 L Street, NW, Suite 1000
Washington, DC  20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
hzavareei@tzlegal.com
sgoren@tzlegal.com
ktaylor@tzlegal.com

Annick Persinger (CA Bar No. 272996)
**TYCKO & ZAVAREEI LLP**
483 Ninth St, Suite 200
Oakland, CA 94607
Telephone: (510) 254-6808
Facsimile: (202) 973-0950
apersinger@tzlegal.com

E. Powell Miller (*pro hac vice* forthcoming)
**THE MILLER LAW FIRM, P.C.**
950 West University Drive, Suite 300
Rochester, Michigan 48307
248.841.2200
248.652.2852 *facsimile*
epm@miller.law

Greg F. Coleman (*pro hac vice* forthcoming)
**GREG COLEMAN LAW**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
(865) 247-0080
greg@gregcolemanlaw.com

*Attorneys for Plaintiffs and the putative class*