Annick M. Persinger, SBN 272996
**TYCKO & ZAVAREEI LLP**
483 Ninth St, Suite 200
Oakland, CA 94607
Telephone: 510-254-6808
Facsimile: 202-973-0950
apersinger@tzlegal.com

E. Powell Miller (*pro hac vice* forthcoming)
**The Miller Law Firm, P.C.**
950 West University Drive, Suite 300
Rochester, Michigan 48307
Tel: 248.841.2200
Fax: 248.652.2852
epm@miller.law

Hassan A. Zavareei, SBN 181547
Kyra A. Taylor (*pro hac vice* forthcoming)
**TYCKO & ZAVAREEI LLP**
1828 L Street, NW, Suite 1000
Washington, DC  20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
hzavareei@tzlegal.com
ktaylor@tzlegal.com

Greg F. Coleman (*pro hac vice* forthcoming)
**GREG COLEMAN LAW**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
(865) 247-0080
greg@gregcolemanlaw.com

*Counsel for Plaintiffs and the Proposed Classes*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

DEONN MORGAN, LYDIA ZEPEDA, SOPHIA IVY, KELLY OKOROCHA, JENNIFER ZIELINSKI, CHRISTOPHER BIZZELLE, AND DANA RODENBECK individually and on behalf of themselves and all others similarly situated,

              PLAINTIFFS,
     vs.

APPLE INC.,

              DEFENDANT.

Case No. 4:17-cv-5277-RS

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Hon. Richard Seeborg

Hearing Date:    April 19, 2018
Time:              1:30 p.m.
Courtroom:      3 – 17th Floor

**TABLE OF CONTENTS**

PAGE(S)

I.      INTRODUCTION ................................................................................................1

II.     APPLE'S MISREPRESENTATIONS ARE ACTIONABLE ..............................1

        A.      Apple's "Sweat and Water Resistant" Misrepresentation Is Actionable ...........1

        B.      Apple's Battery-Life Misrepresentations Are Actionable ...............................4

        C.      Plaintiffs Adequately Pled Reliance .................................................................5

        D.      Apple Knew or Should Have Known of the Defect ..........................................6

III.    APPLE BREACHED ITS EXPRESS AND IMPLIED WARRANTIES ...............7

        A.      Apple's Battery-Life and Sweat & Water Resistance Promises Are
                Express Warranties .............................................................................................7

                1.      *Plaintiffs Adequately State Claims for Breach of Express Warranty
                        Under Pennsylvania, Florida, Illinois, and Texas Laws* ...........................8

        B.      Pre-Suit Notice Was Not Required and Was Given in Any Event ...................9

        C.      Plaintiffs' Claims Under the Limited Warranty Are Based On
                Allegations of Manufacturing Defects ............................................................10

        D.      Plaintiffs Have Sufficiently Pled Their Implied Warranty Claims ................12

                1.      *The Song-Beverly Consumer Warranty Act—Implied Warranty of
                        Merchantability* .......................................................................................12

                2.      *The Implied Warranty of Fitness for Particular Purpose* .....................14

                3.      *Implied Warranties of Merchantability and Fitness Claims Under
                        Pennsylvania, Florida, Illinois, and Texas Law* .....................................16

                4.      *The Breach of Warranty Against Redhibitory Defects Claims Under
                        Louisiana Law* .........................................................................................17

                5.      *The Magnuson-Moss Warranty Act* .......................................................17

IV.     PLAINTIFFS HAVE STANDING ....................................................................18

        A.      Plaintiffs Have Standing to Seek Injunctive Relief ........................................18

        B.      Plaintiffs Have Standing to Bring Claims Based on Sweat and Water
                Resistance Misrepresentations ........................................................................20

        C.      Plaintiffs Have Standing to Bring Claims with Respect to Powerbeats 3 .....21

V.      PLAINTIFFS HAVE STATED A CLAIM FOR NEGLIGENCE ....................24

VI.     CONCLUSION ..................................................................................................25

# TABLE OF AUTHORITIES

**PAGE(S)**

## Cases

*Am. Suzuki Motor Corp. v. Superior Court,*
  44 Cal. Rptr. 2d 526 (Cal. App. 1995) ............................................................ 14

*Anderson v. Jamba Juice Co.,*
  888 F. Supp. 2d 1000 (N.D. Cal. 2012) ........................................................... 23

*Anunziato v. eMachines, Inc.,*
  402 F. Supp. 2d 1133 (C.D. Cal. 2005) ........................................................... 15

*Apodaca v. Whirlpool Corp.,*
  2013 WL 6477821 (C.D. Cal.  Nov. 8, 2013) ................................................. 13

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ......................................................................................... 21

*Astiana v. Dreyer's Grand Ice Cream, Inc.,*
  2012 WL 2990766 (N.D. Cal. July 20, 2012) ................................................. 23

*Azar v. Gateway Genomics, LLC,*
  2017 WL 1479184 (S.D. Cal. Apr. 25, 2017) ................................................. 15

*Barocio v. Gen. Elec. Co.,*
  2014 WL 31255 (Tex. App. Jan. 3, 2014) ....................................................... 10

*Berge Helene Ltd. v. GE Oil & Gas, Inc.,*
  830 F. Supp. 2d 235 (S.D. Tex. 2011) ............................................................... 8

*Bietsch v. Sergeant's Pet Care Prods., Inc.,*
  2016 WL 1011512 (N.D. Ill. Mar. 15, 2016) .................................................. 10

*Birdsong v. Apple Inc.,*
  590 F.3d 955 (9th Cir. 2009) ........................................................................... 21

*Broomfield v. Craft Brew Alliance, Inc.,*
  2017 WL 5665654 (N.D. Cal. Nov. 27, 2017) ................................................ 20

*Bruno v. Quten Research Inst., LLC,*
  280 F.R.D. 524 (C.D. Cal. 2011) .................................................................... 22

*Bryde v. Gen. Motors, LLC,*
  2016 WL 6804584 (N.D. Cal. Nov. 17, 2016) .......................................... 15, 16

*Cirulli v. Hyundai Motor Co.,*
  2009 WL 5788762 (C.D. Cal. June 12, 2009) ................................................ 6, 7

*Clemens v. DaimlerChrysler Corp.,*
  534 F.3d 1017 (9th Cir. 2008) ................................................................... 16, 17

*Daniel v. Ford Motor Co.,*
  806 F.3d 1217 (9th Cir. 2015) ......................................................................... 13

*Davidson v. Kimberly-Clark Corp.,*
  873 F.3d 1103 (9th Cir. 2017) ............................................................... 18, 19, 20

*Donohue v. Apple,*
  871 F. Supp. 2d 913 (N.D. Cal. 2012).............................................................22, 23

*Elias v. Hewlett-Packard Co.,*
  950 F. Supp. 2d 1123 (N.D. Cal 2013) ..................................................................12

*Frenzel v. Aliphcom,*
  2015 WL 4110811 (N.D. Cal. Jul. 7, 2015) .............................................................5

*Garcia v. Chrysler Group LLC,*
  127 F. Supp. 3d 212 (S.D.N.Y. 2015) ....................................................................18

*Gilbert Fin. Corp. v. Steelform Contracting Co.,*
  Cal. Rptr. 448 (Cal. App. 1978) ............................................................................15

*Granfield v. NVIDIA Corp.,*
  2012 WL 2847575 (N.D. Cal. Jul. 11, 2012) .........................................................24

*Greenman v. Yuba Power Prods.,*
  59 Cal. 2d 57 (1963)..................................................................................................9

*Hadley v. Kellogg Sales Co.,*
  2017 WL 3453391 (N.D. Cal. Aug. 10, 2017).........................................................2

*Hardt v. Chrysler Grp. LLC,*
  2015 WL 12683965 (C.D. Cal. June 15, 2015) .....................................................12

*Herron v. Best Buy Co. Inc.,*
  924 F. Supp. 2d 1161 (E.D. Cal. 2013) ...................................................................5

*Horvath v. LG Elecs. Mobilecomm U.S.A., Inc.,*
  2012 WL 2861160 (S.D. Cal. Feb. 13, 2012) .......................................................11

*In re Bob Rigby, Inc.,*
  62 B.R. 900 (M.D. Fla. 1986) ..................................................................................8

*In re Cartwright v. Viking Industries, Inc.,*
  249 F.R.D. 351 (E.D. Cal. 2008) ...........................................................................16

*In re Rust-Oleum Restore Mktg., Sales Practices & Prod. Liab. Litig.,*
  155 F. Supp. 3d 772 (N.D. Ill. 2016)..........................................................3, 4, 10, 16

*In re Seagate Tech. LLC Litig.,*
  233 F. Supp. 3d 776 (N.D. Cal. 2017).....................................................................12

*In re Sony Grand Wega,*
  758 F. Supp. 2d 1077 (S.D. Cal. 2010) ..................................................................17

*In re Sony Vaio Computer Notebook Trackpad Litig.,*
  2010 WL 4262191 (S.D. Cal. Oct. 28, 2010) ........................................................15

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.,*
  754 F. Supp. 2d 1145 (C.D. Cal. 2010) ..............................................................11, 15

*Incubadora Mexican, SA de CV v. Zoetis, Inc.,*
  310 F.R.D. 166 (E.D. Pa. 2015)..............................................................................10

*J'Aire Corp. v. Gregory,*
  598 P.2d 60 (Cal. 1979) ......................................................................................24, 25

*Johns v. Bayer Corp.,*
  2010 WL 476688 (S.D. Cal. Feb. 9, 2010) ........................................................... 24

*Johnson v. Mitsubishi Digital Elecs. Am., Inc.,*
  578 F. Supp. 2d 1229 (C.D. Cal. 2008) .................................................................. 8

*Johnson v. Nissan N. Am., Inc.,*
  272 F. Supp. 3d 1168 (N.D. Cal. 2017) ................................................................ 11

*Kalitta Air, LLC v. Cent. Tex. Airborne Sys.,*
  315 F. App'x 603 (9th Cir. 2008) ........................................................................ 24

*Keegan v. Amer. Honda Motor Co., Inc.,*
  838 F. Supp. 2d 929 (C.D. Cal. 2012) ........................................................... 10, 18

*Kowalsky v. Hewlett-Packard Co.,*
  2011 WL 3501715 (N.D. Cal. Aug. 10, 2011) ....................................................... 6

*Kowalsky v. Hewlett-Packard Co.,*
  771 F. Supp. 2d 1138 (N.D. Cal. 2010) .................................................................. 6

*Lengen v. General Mills, Inc.,*
  2016 WL 2602416 (E.D. Cal. May 5, 2016) ........................................................... 7

*Lindberg v. Coutches,*
  334 P.2d 701 (Cal. App. Dep't Super. Ct. 1959) .................................................. 14

*Long v. Graco Children's Prods. Inc.,*
  2013 WL 4655763 (N.D. Cal. Aug. 26, 2013) .................................................... 6, 7

*Madenlian Flax USA Inc.,*
  2014 WL 7723578 (C.D. Cal. Mar. 31, 2014) ..................................................... 24

*Maloney v. Verizon Internet Servs, Inc.,*
  413 F. App'x 997 (9th Cir. 2011) .......................................................................... 5

*Marcus v. Apple Inc.,*
  2015 WL 151489 (N.D. Cal. Jan. 8, 2015) ..................................................... 13, 15

*Martin v. Tradewinds Beverage Co.,*
  2017 WL 1712533 (C.D. Cal. Apr. 27, 2017) ....................................................... 9

*McVicar v. Goodman Global, Inc.,*
  1 F. Supp. 3d 1044 (C.D. Cal. 2014) ...................................................................... 9

*Miller v. Ghirardelli Chocolate Co.,*
  2013 WL 1402682 (N.D. Cal. Apr. 5, 2013) .................................................... 23, 26

*Morgan v. Harmonix Music Sys., Inc.,*
  2009 WL 20131765 (N.D. Cal. Jul. 7, 2009) ..................................................... 1, 4

*Noble v. Samsung Electronics Amer. Inc.,*
  No. 15-cv-03713-MCA-LDW (D.N.J. Feb. 8, 2018) ......................................... 4, 8

*Philippine Nat'l Oil Co. v. Garrett Corp.,*
  724 F.2d 803 (9th Cir. 1984) .............................................................................. 12

*Rosales v. FitFlop USA, LLC,*
  882 F. Supp. 2d 1168 (S.D. Cal. 2012) ................................................................ 9

*Sanders v. Apple, Inc.*,
    672 F. Supp. 2d 978 (N.D. Cal. 2009)..................................................................................9

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997) ...........................................................................................2

*Stearns v. Select Comfort Retail Corp.*,
    763 F. Supp. 2d 1128 (N.D. Cal. 2010) .............................................................................9

*Szajna v. Gen. Motors Corp.*,
    503 N.E.2d 760 (Ill. 1986) ...........................................................................................8, 16

*Taylor v. Nike, Inc.*,
    2017 WL 663056 (D. Or. Feb. 17, 2017)..........................................................................7

*Tomek v. Apple, Inc.*,
    2013 WL 3872774 (E.D. Cal. July 25, 2013) ...................................................................5

*U.S. Tire-Tech, Inc. v. Borean, B.V.*,
    110 S.W.3d 194 (Tex. App. 2002) ....................................................................................8

*Varner v. Domestic Corp.*,
    2017 WL 3730618 (S.D. Fla. Feb. 7, 2017) ...................................................................16

*Velasquez-Reyes v. Samsung Elec. Amer., Inc.*,
    2017 WL 4082419 (C.D. Cal. Sept. 13, 2017)..................................................2, 3, 20, 24

*Victorino v. FCA US LLC*,
    2016 WL 6441518 (S.D. Cal Nov. 1, 2016) ...................................................................13

*Vitt v. Apple Computer, Inc.*,
    469 Fed. Appx. 605 (9th Cir. 2012) ..................................................................................3

*Walter v. Hughes Commc'ns, Inc.*,
    682 F. Supp. 2d 1031 (N.D. Cal. 2010) .............................................................................5

*Werdebaugh v. Blue Diamond Growers*,
    2013 WL 5487236 (N.D. Cal. Oct. 2, 2013) ..............................................................23, 24

*Williamson v. Apple, Inc.*,
    2012 WL 3835104 (N.D. Cal. Sept. 4, 2012) ...................................................................3

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012) .......................................................................................4, 6

**Statutes**

13 Pa. Cons. Stat. § 2607(c)(1)..............................................................................................9

15 U.S.C. § 2310(d)(3)(C) ...................................................................................................18

810 Ill. Comp. Stat. 5 / 2-607(3)(a) .......................................................................................9

Cal. Civ. Code 1770(a)(9) ......................................................................................................7

Cal. Com. Code § 2719 .........................................................................................................12

Fla. Stat. § 672.313, Official Comm. 2 ..................................................................................8

Fla. Stat. § 672.607(3)(a) ........................................................................................................9

La. Civ. Code Ann. art. 2522 ................................................................................................................. 17

Tex. Bus. & Com. Code Ann. § 2.607(c)(1) ........................................................................................... 9

I.     **INTRODUCTION**

Plaintiffs Deonn Morgan, Lydia Zepeda, Sophia Ivy, Kelly Okorocha, Jennifer Zielinski, Christopher Bizzelle, and Dana Rodenbeck ("Plaintiffs") all purchased expensive Powerbeats headphones from Defendant Apple Inc. ("Apple" or "Defendant") based on Apple's representations that they would be "Sweat and Water Resistant" and have 6-12 hours of battery life. Apple's labels, websites, and shelf tags alike make the exact same representations—that the headphones are "Sweat and Water Resistant," that the Powerbeats 2 has a "6 hour rechargeable battery" and that Powerbeats 3 has "UP TO 12 HR BATTERY LIFE." But Apple's Powerbeats did not live up to these representations, which Apple repeats on every platform of its marketing campaign that focuses on Powerbeats special suitability for exercise. Instead, Plaintiffs were sold defective headphones. Plaintiffs and many consumers like them have all experienced the same defect—rapidly diminishing battery life and eventual failure to retain a charge—after using the Powerbeats during exercise or other light activity. And despite numerous consumer complaints, Apple has not publicly acknowledged the defect or attempted to fix it. Instead, when consumers attempt to take advantage of Apple's one-year warranty and return the Powerbeats for a new pair, Apple sends replacement Powerbeats that contain the exact same defect. Many consumers, including Plaintiffs, have been through several pairs of Powerbeats only to experience the same defect each time. Consumers are therefore caught in a vicious cycle: use, malfunction, replacement, repeat. And after the warranty-period has expired, consumers are left with a broken pair of Powerbeats with no recourse. Apple continues to promote its faulty Powerbeats, and continues to profit handsomely from their sale. In so doing, Apple has defrauded the public and cheated consumers.

Based on misstatements of law and numerous clearly inapplicable cases, Apple moves to dismiss Plaintiffs' plainly well-pleaded First Amended Complaint. Facing a looming class of consumers with expensive but non-functioning headphones, Apple adopted the time-worn strategy of throwing everything at the wall and hoping something would stick. Nothing does. As detailed fully below, Apple's motion to dismiss should be denied in its entirety.

II.    **APPLE'S MISREPRESENTATIONS ARE ACTIONABLE**

A.     **Apple's "Sweat and Water Resistant" Misrepresentation Is Actionable**

Contrary to Apple's contention, Apple's "Sweat and Water Resistant" representation is not "an

inherently vague and generalized term." *See* Apple's Motion to Dismiss, Dkt. No. 31 (hereafter "Def.") at 10. Rather, Apple's "Sweat and Water Resistant" claim is provably false because Plaintiffs allege that Powerbeats cease functioning when exposed to sweat, water, or moisture.  *See, e.g.*, First Amended Complaint, Dkt. No. 28 (hereafter "FAC") ¶ 44. Thus, Powerbeats are not in fact, "Sweat and Water Resistant." Since the truth or falsity of Apple's "Sweat and Water Resistant" representation can be objectively measured, Apple's uniform "Sweat and Water Resistant" representation is not, as Apple suggests, generalized puffery. *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) (holding that "specific and measurable advertisement claim[s]" are not puffery). Indeed, "Sweat and Water Resistant" would lead reasonable consumers to believe that Powerbeats would continue to function despite being exposed to sweat and water, and to rely on that fact. *See, e.g.*, *Hadley v. Kellogg Sales Co.*, 2017 WL 3453391, at *22 (N.D. Cal. Aug. 10, 2017) ("wholesome" not generalized puffery because it might cause a reasonable consumer to think that a product was healthy). Here, Apple's false statement is specific, measurable, and actionable.

   *Velasquez-Reyes v. Samsung Elec. Amer., Inc.*, 2017 WL 4082419 (C.D. Cal. Sept. 13, 2017) is instructive. In *Velasquez-Reyes*, the plaintiff alleged that, in commercials, Samsung "consistently represent[ed]" that the Galaxy S7 phone was water resistant. *Id.* at *2. By way of example, one commercial featured a famous rapper pouring champagne on the phone. *Id.* The plaintiff alleged that Samsung's water resistance representations were false when the Galaxy S7 stopped functioning after being dropped in the toilet. *Id.* at *3. The court concluded that the Samsung's "water resistance" advertising was actionable false advertising because the plaintiff had "presented a scenario in which the reasonable consumer's likelihood of being deceived is plausible—but a factual inquiry best left to the jury." *Id.* at *9. Similarly, here, Apple consistently represents that Powerbeats are "Sweat and Water Resistant," including on the box, on store-shelf displays, online, and in commercials featuring famous athletes such as Serena Williams and LeBron James sweating profusely while using Powerbeats. FAC ¶¶ 3, 61, 77, 281. Plaintiffs further allege that Powerbeats cease functioning after being used during exercise. *Id.* ¶¶ 5, 44, 65, 79-80, 88-90, 102-104, 115-17, 129-30, 137-39, 146-48, 235, 285-86, 343. Thus, as in *Velasquez-Reyes*, Plaintiffs have "presented a scenario in which the reasonable consumer's likelihood

of being deceived is plausible," and a factual inquiry best left to the jury.  *See Velasquez-Reyes*, 2017 WL 4082419, at *9; *see also In re Rust-Oleum Restore Mktg., Sales Practices & Prod. Liab. Litig.*, 155 F. Supp. 3d 772, 818 (N.D. Ill. 2016) (claims of "weather resistance," "ultimate water repellency," and "lasting moisture protection" were not "mere puffery as they convey information on which a consumer of ordinary prudence and comprehension may rely upon").

Apple's cited cases are not to the contrary. In *Vitt v. Apple Computer, Inc.*, 469 Fed. Appx. 605, 607 (9th Cir. 2012), while the court determined that the word "durable" did not claim or imply that the iBook's useful life would extend "at least a couple of years," the court specifically noted that the word "durable" *could be a statement of fact* in a different context. Specifically, the court concluded that "durable" could imply to consumers that the iBook was resistant to problems "occurring because of its being dropped"—just not that it would extend for years as the plaintiffs had alleged. Here, Plaintiffs' allegations are akin to the situation of the iBook being resistant to problems. In other words, "Sweat and Water Resistant" is a statement of fact that reasonably led consumers to believe that Powerbeats would resist problems occurring because of exposure to sweat and water. Thus, here, Apple makes "factual representations that a given standard has been met" which can be tested by exposing Powerbeats to sweat and water. *Cf. Vitt*, 469 F. App'x at 607.

Apple's reliance on *Williamson v. Apple, Inc.*, 2012 WL 3835104, at *5 (N.D. Cal. Sept. 4, 2012) is also unpersuasive. In *Williamson*, Apple made generalized statements about the scratch resistance of iPhone 4's back panel. *Id.* at *1. The plaintiff alleged he was deceived because his iPhone fell from a chair and cracked. *Id.* at *2. The court explained that it was unreasonable for consumers to believe that descriptions of the panels of glass on the iPhone, "which notably ha[d] nothing to with phonedropping" somehow made the iPhone indestructible or drop-proof. *Id.* at *6. In finding that consumers could not reasonably have been deceived, the court emphasized the "well-known fact of life that glass can break under impact, even glass that has been reinforced." *Id.* Differently, here, it was reasonable for Plaintiffs to believe that Apple's multi-platform statements that Powerbeats are "Sweat and Water Resistant" would withstand sweat and moisture. *See Velasquez-Reyes*, 2017 WL 4082419, at *8 ("This case does not present the rare instance where an advertisement's inability to deceive is so obvious that the claim must

1    be dismissed"). Further, whereas, in *Williamson*, the representations at issue had nothing to do with

2    "phonedropping," here, Apple's representations refer specifically to sweat and water resistance.  *Cf.*

3    *Morgan v. Harmonix Music Sys., Inc.*, 2009 WL 20131765, at *3-6 (N.D. Cal. Jul. 7, 2009) as amended (no

4    specific representation made about pedal that eventually failed with Rock Band game).

5         In sum, Apple ceaselessly promotes Powerbeats as Sweat and Water Resistant and made for

6    exercise. Relying on these representations, Plaintiffs—all seeking headphones for their workouts—

7    reasonably believed that they would be "Sweat and Water Resistant" as Apple claimed. Since reasonable

8    consumers could be deceived by Apple's "Sweat and Water Resistant" claims, Apple's representations

9    are not inherently vague and generalized, but rather, actionable false and misleading advertising.[1]

10   **B.    Apple's Battery-Life Misrepresentations Are Actionable**

11        Like Apple's "Sweat and Water Resistant" claim, Apple's claims that Powerbeats 2 has a "6-hour

12   rechargeable battery" and that the Powerbeats 3 has "UP TO 12 HR BATTERY LIFE" are definite

13   factual misrepresentations. FAC ¶ 43. Powerbeats do not, in fact, have a battery life that lasts anywhere

14   close to six or twelve hours. *Id.* at ¶ 4. Instead, Powerbeats stop accepting a charge and the indicator

15   light blinks red or fails to turn on at all. *Id.* Then, the Powerbeats will either not power on at all, or will

16   only power on for minutes at a time. *Id. See Noble v. Samsung Electronics Amer. Inc.*, No. 15-cv-03713-

17   MCA-LDW, Slip. Op. at 8-10 (D.N.J. Feb. 8, 2018) (finding fraud allegations sufficient where Samsung

18   represented that a watch had 24-48 hour battery life when, in fact, the battery lasted only 4-6 hours).[2]

19        Apple argues that these statements are not sufficiently definite because consumers cannot be

20   deceived by the phrase "up to." First and foremost, the "up to" limitation does not apply to the

---

[1] Apple's argument that its "Built to Endure" and workout representations are inactionable are
misplaced. Def. at 11-12. Those representations provide context for Plaintiffs' reliance on Apple's
"Sweat and Water Resistant" and battery-life representations. Indeed, it is the totality of these
representations—which are consistently made together—that gave the false and reasonable impression
that the headphones are suited for heavy workouts when they are not. *See In re Rust-Oleum Restore Mktg.,
Sales Practices & Prod. Liab. Litig.*, 155 F. Supp. 3d at 818 (holding misrepresentations regarding durability,
resilience, and weather resistance were actionable when "taken together").

[2] *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012) is not analogous. There, the plaintiff
claimed that a power jack becoming disconnected and causing a laptop to catch fire was not sufficiently
explained (or plausible) because it was "difficult to conceive" how the laptops could ignite if they are
"unable to receive an electrical charge" while disconnected. Here, Plaintiffs' claim that the headphones
do not last anywhere near as long as 6-12 hours because they become non-functional or will only hold a
charge for minutes is not inherently contradictory or implausible.

Powerbeats 2, which made a plain representation of 6 hours without the "up to" language. *See* FAC n. 2. With respect to the Powerbeats 3, numerous courts have held that similar "up to" claims can be materially misleading to reasonable consumers. *See Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1171–73 (E.D. Cal. 2013) (noting that "multiple courts have found that 'up to' representations may materially mislead reasonable consumers") (citing cases); *Frenzel v. Aliphcom*, 2015 WL 4110811, at *11 (N.D. Cal. Jul. 7, 2015) (finding that the statement "Battery life up to 10 days" sufficient to state a false advertising claim under California consumer protection law despite the phrase "up to"); *Walter v. Hughes Commc'ns, Inc.*, 682 F. Supp. 2d 1031 (N.D. Cal. 2010). Additionally, Plaintiffs allege, based on consumer research, that consumers read right over the phrase "Up to" and interpret the phrase "Up to 12 HR" to mean that they would get 12 hours of battery life. FAC n. 2. Since Plaintiffs allege, based on consumer research, that Plaintiffs and the putative class members can be deceived despite the use of phrases like "up to," Plaintiffs' allegations are readily distinguishable from the plaintiffs' allegations in Apple's cited cases. Moreover, Apple's cited cases are additionally distinguishable because the phrase "up to" was used in conjunction with several additional caveats and qualified statements. *See Tomek v. Apple, Inc.*, 2013 WL 3872774, at *4 (E.D. Cal. July 25, 2013) (Apple used the qualifier "up to" *in addition to* the caveat "MacBook Pro ... may adjust processor speed as needed to maintain optimal system operation" and "[b]attery life and charge cycles vary by use and settings"); *Maloney v. Verizon Internet Servs, Inc.*, 413 F. App'x 997, 999 (9th Cir. 2011) (phrase "up to 3 Mpbs" used in addition to terms of service contract that explained that internet speeds varied based on maximum availability at a consumer's location).

## C.     Plaintiffs Adequately Pled Reliance

Apple claims that Plaintiffs' allegations of reliance are conclusory because "the FAC does not allege with particularity what statements Plaintiffs found material when purchasing the Powerbeats." Def. at 12. In fact, Plaintiffs all exhaustively detail which representations they were exposed to, and which they relied on. *See* FAC ¶¶ 70-166. Apple also complains that Plaintiffs Zepeda, Ivy, and Rodenbeck, who saw representations on non-Apple websites, do not explain how the statements are attributable to Apple. Def. at 12; *id.* at 18 (same argument as to warranty claims). To the contrary, Plaintiffs allege that the statements at issue were made on retailers' websites at the direction of Apple:

Apple ensures that its retailers uniformly promote the same battery life and sweat and water

> resistance messages at consumers' point of purchase. By way of example, online retailers, including, but not limited, hsn.com (the Home Shopping Network), bestbuy.com, Amazon.com, target.com, Walmart.com, Costco.com, kohls.com, dickssportinggoods.com, sears.com, AT&T.com and T-mobile.com, all include the identical "6 hour" and "up to 10 hour" battery life, and "sweat and water resistant" representations on their sites. Displays on shelves at Best Buy and Costco make those same representations.

*See* FAC ¶ 55. As such, Plaintiffs have alleged with particularity the circumstances in which they were exposed to and relied on the misrepresentations.

### D. Apple Knew or Should Have Known of the Defect

Apple argues that Plaintiffs' claims for violation of sections 1770(a)(5), (a)(7), and (a)(9) of the CLRA are insufficient because Plaintiffs have not adequately pleaded that Apple had knowledge of the defect. Def. at 14. To support that proposition, Apple cites *Wilson*, 668 F.3d at 1145. But *Wilson* supports a finding that Plaintiffs *have* adequately pleaded that Apple knew of the defect. In *Wilson*, the Ninth Circuit found that vague allegations that defendant "became familiar with" the defect were not sufficient. In doing so, however, the Ninth Circuit distinguished cases like this one where plaintiffs allege that defendants track reports of defects. *Id.* at 1146-1147.[3] And while *Wilson* held that fourteen undated complaints were insufficient, that has no bearing here where Plaintiffs have cited to hundreds of complaints on Apple's own website that include dates—and in most cases predate Plaintiffs' purchases. *See* FAC ¶¶ 66-68. And unlike in *Wilson*, the Plaintiffs here allege that the hundreds of complaints were made directly to Apple. *See Kowalsky v. Hewlett-Packard Co.*, 2011 WL 3501715, at *5 (N.D. Cal. Aug. 10, 2011) (finding that contemporaneous consumer complaints and testing would have given HP knowledge of defect); *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1138, 1145 (N.D. Cal. 2010) ("'[A]llegations of consumer complaints posted on a defendant's own customer support website may be sufficient to raise a reasonable inference that the defendant knew of a product defect.... [I]t is reasonable to infer that a company monitors the complaints it receives on its website.'").

Here, Plaintiffs allege that Apple was aware of defect because of the massive numbers of requests for repair and replacement and through its tracking of warranty repairs—together with the

---

[3] *See also Long v. Graco Children's Prods. Inc.*, 2013 WL 4655763, at *6-7 (N.D. Cal. Aug. 26, 2013) (finding that defendant knew or should have known about the defect where plaintiff alleged that the defendants track consumer complaints); *Cirulli v. Hyundai Motor Co.*, 2009 WL 5788762, at *4 (C.D. Cal. June 12, 2009) (finding that the plaintiff had sufficiently alleged that defendant knew or should have known of the defect at the time the cars were sold because the defendant tracked reports of defective frames).

thousands of complaints on its own website. *See, e.g.,* FAC ¶ 305 ("Apple knew, or reasonably should have known, that its Powerbeats were defective and/or the result of the use of poor material and workmanship, because they continuously received broken headphones from consumers, often several times from individual consumers. Despite the constant stream of returned Powerbeats, Apple continued to sell Powerbeats to the public. Apple knew, or reasonably should have known, of the defect because, in the normal course of business, Apple tracks headphones returned under its warranty and the complaints related to those problems and therefore must have noticed that there was an unusually high incidence of use of the limited warranty."); ¶ 66 (citing hundreds of consumer complaints from Apple's own website regarding the defect); ¶ 299. Thus, Plaintiffs sufficiently allege that Apple knew or should have known of the defect. *See, e.g., Long,* 2013 WL 4655763, at *6-7; *Cirulli,* 2009 WL 5788762, at *4.

Contrary to Apple's contention, Plaintiffs also adequately allege that Apple advertised Powerbeats with "an intent not to sell them as advertised" in violation of 1770(a)(9). Specifically, Plaintiffs allege that Apple sold Powerbeats even though they were not sweat and water proof, and did not have hours of battery-life as Apple had claimed in its advertising. *See* Cal. Civ. Code 1770(a)(9); *see also, e.g., Lengen v. General Mills, Inc.,* 2016 WL 2602416, at *6 (E.D. Cal. May 5, 2016) (applying subsection (a)(9) where Cheerios containing gluten were advertised as "Gluten Free"). To supports its claim that Plaintiffs fail to allege a violation of 1770(a)(9) Apple cites a clearly inapplicable case—*Taylor v. Nike, Inc.,* 2017 WL 663056, at *8 (D. Or. Feb. 17, 2017). Whereas, here, Plaintiffs allege that Apple misrepresented characteristic of the product (*i.e.* the ability to withstand sweat and to have hours of battery life), in *Taylor,* the plaintiff alleged that the price of the product was deceptive, but did not allege that any characteristic of the products were misrepresented.  Since Plaintiffs allege that Apple sold the Powerbeats even though they were not "Sweat and Water Resistant" with hours of battery life like Apple advertised, Plaintiffs have stated a violation of 1770(a)(9).

## III.   APPLE BREACHED ITS EXPRESS AND IMPLIED WARRANTIES

### A.   Apple's Battery-Life and Sweat & Water Resistance Promises Are Express Warranties

In support of its argument that Apple did not breach an express warranty made to Plaintiffs, Apple essentially repeats its argument that its representations are generalized puffery. Def. at 17. To

constitute an actionable warranty, a statement must be "specific and unequivocal." *Johnson v. Mitsubishi Digital Elecs. Am., Inc.*, 578 F. Supp. 2d 1229, 1236 (C.D. Cal. 2008). As detailed above, Apple makes specific unequivocal representations about battery life, and thereby promises and expressly warrants that the batteries will last 6-12 hours. *See, e.g.*, FAC ¶ 43; *see also, e.g.*, *Noble*, No. 15-cv-03713-MCA-LDW, Slip. Op. at 11 ("Defendant's representations that the Smartwatch battery would last 24-48 hours constitute an express warranty."). Since Powerbeats do not last for anywhere near 6-12 hours, Apple breached its warranty to Plaintiffs causing them injury because they paid a premium for useless headphones. Similarly, Apple affirms that Powerbeats are "Sweat and Water Resistant" but they are not. Because "Powerbeats malfunction during exercise or even when exposed to mild humidity—thus, they are not sweat or water resistant," Apple breached its express warranty to Plaintiffs and caused them harm because, again, they paid a premium for non-functioning headphones. *See, e.g.*, FAC ¶ 44.

### 1. Plaintiffs Adequately State Claims for Breach of Express Warranty Under Pennsylvania, Florida, Illinois, and Texas Laws

Apple claims Plaintiffs' express warranty claims under Florida, Illinois, and Texas law fail because Plaintiffs lack privity with Apple. Def. at 19. In Florida, express warranty claims are not limited to those only between a purchaser and direct seller. Fla. Stat. § 672.313, Official Comm. 2 ("[T]he warranty sections of this Article are not designed in any way to disturb [the law recognizing] that warranties need not be confined either to sales contracts or to the direct parties to such a contract."); *In re Bob Rigby, Inc.*, 62 B.R. 900, 906 (M.D. Fla. 1986) (noting that Section 672.313 "does not limit express warranty to the actual seller . . . , but also extends the same to the manufacturer of the goods"). Under Illinois law, "if a Magnuson-Moss written warranty . . . is given . . . the nonprivity 'consumer' should be permitted to maintain an action on an implied warranty against the 'warrantor.'" *Szajna v. Gen. Motors Corp.*, 503 N.E.2d 760, 769 (Ill. 1986). And under Texas law, privity of contract is not required. *Berge Helene Ltd. v. GE Oil & Gas, Inc.*, 830 F. Supp. 2d 235, 251 (S.D. Tex. 2011) (citing *U.S. Tire-Tech, Inc. v. Borean, B.V.*, 110 S.W.3d 194, 198 (Tex. App. 2002) (holding that privity is not required in order to sustain a breach of express warranty claim for purely economic losses where express warranty was created through representations from third party to second party and passed on to the plaintiff)). Here,

because a written warranty exists for the product, the Plaintiffs are either permitted to bring a claim under the express warranty against the manufacturer, Fla. Stat. § 672.313; *Berge Helene Ltd.*, 830 F. Supp. 2d at 251, or are treated as if being in privity with Apple, *Szajna*, 503 N.E.2d at 769.

### B.  Pre-Suit Notice Was Not Required and Was Given in Any Event

Apple argues that Plaintiffs' express warranty claims fail because they did not provide pre-suit notice. First, under California law, it is well established that there is an exception to the pre-suit notice rule where consumers do not purchase a product directly from the manufacturer. *See, e.g., Martin v. Tradewinds Beverage Co.*, 2017 WL 1712533, at *10 (C.D. Cal. Apr. 27, 2017) ("California law recognizes an exception, however, when the buyer is not in privity of contract with the manufacturer."); *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1177-78 (S.D. Cal. 2012); *McVicar v. Goodman Global, Inc.*, 1 F. Supp. 3d 1044, 1057 (C.D. Cal. 2014); *Greenman v. Yuba Power Prods.*, 59 Cal. 2d 57, 61 (1963) ("[Section 2607] does not provide that notice must be given of the breach of a warranty that arises independently of a contract of sale between the parties."). Since every Plaintiff purchased from a retailer, and not from Apple directly, the notice requirement does not apply. *Cf. Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, at 989 (N.D. Cal. 2009) (exception did not apply because the plaintiff purchased directly from Apple).

In any event, all of the Plaintiffs, including those from California, did indeed give notice by contacting Apple about the problems with their headphones. *See Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1143 (N.D. Cal. 2010) (finding that plaintiff had adequately alleged pre-suit notice where she filed suit three days after she contacted a customer service representative to complain about mold in her bed even after she had been offered (and given) a refund, and emphasizing that under the UCC notice need not be in a particular form "to let the seller know the transaction [was] still troublesome and must be watched"). Under each state's law—all of which are patterned after the Uniform Commercial Code, and all of which share the same pertinent language on notice—"the buyer must within a reasonable time after he [or she] discovers or should have discovered any breach notify the seller or breach or be barred from any remedy." Fla. Stat. § 672.607(3)(a); 810 Ill. Comp. Stat. 5 / 2-607(3)(a); 13 Pa. Cons. Stat. § 2607(c)(1); Tex. Bus. & Com. Code Ann. § 2.607(c)(1). After discovering that their Powerbeats were defective, Plaintiffs Ivy, Rodenbeck, Zielinski, and Bizelle all informed Apple

1    and requested a replacement. FAC ¶¶ 91-92, 149, 104-06, 130-31, 140, 142. Each state's notice provision

2    requires only that following the breach the buyer "notify the seller of breach or be barred from any

3    remedy." Fla. Stat. § 672.607(3)(a); 810 I.L.C.S. 5/2 – 607(3)(a); 13 Pa. Cons. Stat. § 2607(c)(1); Tex.

4    Bus. & Com. Code § 2.607(c)(1). These statutes do not require that consumers provide notice in any

5    particular form or conform to particular criteria; only that they provide notice "within a reasonable

6    time" of discovering the defect. Plaintiffs here have done that and have fulfilled the notice requirements

7    under each state's statute. *See Stearns*, 763 F. Supp. 2d at 1143 (discussing UCC); *Keegan v. Amer. Honda*

8    *Motor Co., Inc.*, 838 F. Supp. 2d 929, 952 (C.D. Cal. 2012) (finding pre-suit notice met under Florida law

9    where consumer visited Honda dealership to complain); *In re Rust-Oleum Restore Mktg., Sales Practices*

10   *Prods. Liab. Litig.*, 155 F. Supp. 3d at 799 (finding conclusory allegations of pre-suit notice of problems

11   sufficient at the pleading stage and also noting there an exception where a defendant has actual

12   knowledge of the defect); *Bietsch v. Sergeant's Pet Care Prods., Inc.*, 2016 WL 1011512, at *7 (N.D. Ill. Mar.

13   15, 2016) (finding pre-suit notice sufficient where Bietsch notified Sergeant's customer service

14   department by telephone regarding his dog's injuries prior to the suit being filed); *Incubadora Mexican, SA*

15   *de CV v. Zoetis, Inc.*, 310 F.R.D. 166, 174 (E.D. Pa. 2015) (finding pre-suit notice met with respect to the

16   defendant that the plaintiffs complained to about defective lots prior to bringing suit); *Barocio v. Gen.*

17   *Elect. Co.*, 2014 WL 31255, at *4 (Tex. App. Jan. 3, 2014) (emphasizing that "ordinarily, notice is a

18   question of fact to be determined by the trier of fact" and notice "becomes a question of law when there

19   is no room for ordinary minds to differ about the proper conclusion to be drawn from the evidence").

20   **C.    Plaintiffs' Claims Under the Limited Warranty Are Based On
          Allegations of Manufacturing Defects**

21   Apple argues that its One (1) Year Limited Warranty only covers "materials and workmanship"

22   and not design defects.[4] Def. at 18. But Plaintiffs have in fact alleged defects in the manufacturing

23   process based expressly on poor workmanship and substandard materials. *See* FAC ¶ 27(b), 65, 353. In

24   fact, the term "design defect" appears a mere three times in the complaint; and each reference to a

25   design defect, however, is accompanied by an allegation of shoddy manufacturing. *See* FAC ¶ 4, 41, 65.

26

27   ─────────────
     [4] Apple seems to confuse the express warranty issues somewhat. To be clear, those claims are based on
     the Limited Warranty and the express claims about the battery life, water resistance and other related

28   claims that are part of the benefit of the bargain.

While "warranties covering 'materials or workmanship' do not cover design defects," courts have been averse to dismissing these claims where plaintiffs plead a defect in manufacturing as the Plaintiffs do here. *Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1176-77 (N.D. Cal. 2017) (finding a separate defect in manufacturing sufficient for a warranty claim covering "materials and workmanship" where numerous examples of the defect suggest that the product "came off the assembly line in a substandard condition" (quoting *Barker v. Lull Eng'g Co.*, 573 P.2d 443 (Cal. 1978)); *see also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1181 (C.D. Cal. 2010)("*In re Toyota Motor Corp.*"). ("[T]o the extent that Plaintiffs' breach of express warranty claim is based on allegations other than design defects, they are not barred as beyond the scope of the warranty on 'materials and workmanship.'"); *Horvath v. LG Elecs. Mobilecomm U.S.A., Inc.*, 2012 WL 2861160, at *5 (S.D. Cal. Feb. 13, 2012) (finding plaintiffs' claim not solely based on design defects where plaintiffs allege manufacturing defects caused by freezes, shut downs, power-off completely, and screen bleeding).

Here, Plaintiffs allege that "Reasonable consumers, including Plaintiffs, would not have purchased Powerbeats had they knows that they were made of shoddy materials[] and that they contained defects that would cause the battery life to rapidly diminish and eventually fail to charge entirely," "beats are cheaply constructed," and "Powerbeats contain a . . . **manufacturing** defect." FAC ¶¶ 8-9, 41-43, 64-65 (emphasis added); *see also* ¶¶ 27(b)-(c) and (i), 73-74, 82-83, 92-96, 108-109, 119-125, 133-135, 175-184. The high number of defects present suggests that the Powerbeats "came off the assembly line in a substandard condition." *Johnson*, 272 F. Supp. 3d at 1176-77 (quoting *Barker*, 573 P.2d at 454). These allegations, independent and separate from Plaintiffs' alleged design defect, sufficiently plead and warrant a breach of Apple's express warranty based on "defects in materials and workmanship."

Apple also argues that the claims based on its Limited Warranty fail by the Warranty's terms, which provide that Apple can "exchange the Product with a product with equivalent functionality." FAC ¶ 176. But that's not what Apple did. With respect to Zepeda, Apple refused to honor the warranty after her Powerbeats failed shortly after purchase. FAC ¶¶ 80-81. When Apple did in fact send

replacements *those replacements all failed.*[5] The essential purpose of Apple's Limited Warranty is to ensure that customers are not deprived of functional headphones during the warranty period. *See* Cal. Com. Code § 2719. Since Apple *repeatedly* failed to send functional headphones it breached its Limited Warranty. *See, e.g., Philippine Nat'l Oil Co. v. Garrett Corp.*, 724 F.2d 803, 808 (9th Cir. 1984) (stating that "a repair or replace remedy fails of its essential purpose only if repeated repair attempts are unsuccessful within a reasonable time") (emphasis omitted); *cf. In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 785 (N.D. Cal. 2017) (plaintiffs failed to allege that "Seagate failed to provide any plaintiff with a functional drive after more than one opportunity to fix the nonconformity.").

      **D.**    **Plaintiffs Have Sufficiently Pled Their Implied Warranty Claims**

            *1.*    *The Song-Beverly Consumer Warranty Act—Implied Warranty of Merchantability*

      Apple argues that Plaintiffs' Song-Beverly Act implied warranty of merchantability claim only applies to California purchases and that neither the non-California plaintiffs nor the nationwide class can maintain a cause of action under that statute. As an initial matter, only the Plaintiffs who purchased Powerbeats in California bring California claims on behalf of the Nationwide Class and California Subclass, not all named plaintiffs. Moreover, Apple's argument that nationwide class allegations should be dismissed is premature. Song-Beverly implied warranty claims on behalf of a nationwide class survive a motion to dismiss where the named plaintiffs can plead that they purchased the product at issue in California. Under those circumstances, courts determine the applicability of a California claim to the nationwide class during the class certification stage of litigation. *See Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1125, 1130-31 (N.D. Cal 2013) (permitting plaintiff, a California resident, to bring Song-Beverly implied warranty claims on behalf of a nationwide class); *Hardt v. Chrysler Grp. LLC*, 2015 WL 12683965, at *5 (C.D. Cal. June 15, 2015) (same, noting "[A]s long as the named plaintiff has individual standing to bring [this claim], the question of whether a proposed class can bring claims ... is an issue properly addressed at the class certification stage." (quoting *Clancy v. Bromley Tea Co.*, 2013 WL 4081632, at *4 (N.D. Cal 2013)).

      Apple also argues that California Plaintiff Morgan cannot maintain her Song-Beverly implied

---

[5] *See* FAC ¶ 72; FAC ¶¶ 91-92; FAC ¶¶ 105-106; FAC ¶¶ 117-119; FAC ¶¶ 130-132; FAC ¶¶ 149-150.

warranty claims because she received replacement Powerbeats. Again, Apple is wrong. If a defendant repairs or replaces a plaintiff's defective product, but the product still contains the same unmerchantability issue the first unit contained, the defendant has still violated the Song-Beverly Act. *Apodaca v. Whirlpool Corp.*, 2013 WL 6477821, at *1-2, *10-11 (C.D. Cal.  Nov. 8, 2013) (holding plaintiffs could bring a Song-Beverly Act implied warranty claim even where the product replacements' failures occurred more than one year after the purchase of the original item); *Victorino v. FCA US LLC*, 2016 WL 6441518, at *1, n. 1, *9-10 (S.D. Cal Nov. 1, 2016). Here, Plaintiffs pleaded that the Powerbeats contained a latent design defect that prevented them from (1) having a battery life that lived up to Apple's representations and (2) functioning when used during exercise or when exposed to mild humidity. FAC ¶ 43-44. Thus, all Powerbeats—received via purchase or replacement—contained the same defect that rendered the headphones unmerchantable. Indeed, each replacement also failed.[6] As a result, it is irrelevant when the replacements malfunctioned as Song-Beverly implied warranty claims may be brought after the one-year limitation if the unmerchantability stems from a latent defect. *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1222-23 (9th Cir. 2015) (holding the act "does not create a deadline for discovering latent defects").

Relying on *Marcus v. Apple Inc.,* 2015 WL 151489, at *9 (N.D. Cal. Jan. 8, 2015), Apple next asserts that simply because some of Plaintiffs' products were replaced, there could be no breach of the implied warranties of merchantability. Def. at 21. First, this is factually wrong. Ms. Zepeda asked Apple for a replacement after her Powerbeats failed after seven weeks of usage. Apple refused to give her a replacement. FAC ¶¶ 80-81. This is also an incorrect statement of the law. The *Marcus* court's mention of the plaintiffs receiving replacements for their defective computer parts is dicta; the court never relied on replacement of the products as the determining issue for dismissing the plaintiffs' implied warranties claims. *Marcus*, 2015 WL 151489, at *9. Instead, the court dismissed plaintiffs' implied warranties claims because plaintiffs were able to use the product for roughly eighteen months, which demonstrated that the products "perform[ed] [their] ordinary function adequately." *Id.*. Here, Plaintiffs hardly were able to use their Powerbeats products before each failed after minimal use. Plaintiffs reported that their

---

[6] *See* FAC ¶ 72; FAC ¶¶ 91-92; FAC ¶¶ 105-106; FAC ¶¶ 117-119; FAC ¶¶ 130-132; FAC ¶¶ 149-150.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT          13

Case No. 3:17-cv-05277-RS

products failed after seven months at most, and almost "immediately after purchase" at worst. FAC ¶¶ 90, 104, 130, 139, 147. When Apple did give replacements to Plaintiffs they all failed. *Id.* ¶ 72 (Morgan's replacement failed soon after receipt); *Id.* ¶¶ 91-92 (Ivy received numerous replacements that all failed); *Id.* ¶¶ 105-106 (Zielinski received multiple replacements that all failed); *Id.* ¶¶ 117-119 (Okorocha's replacement failed); *Id.* ¶¶ 130-132 (Bizzelle received at least five replacement headphones, which all failed); *Id.* ¶¶ 149-150 (Rodenbeck received three replacements, which all failed).

### 2.    The Implied Warranty of Fitness for Particular Purpose

Apple claims that Plaintiffs' claims for breach of the implied warranty of fitness for particular purpose is insufficiently pled because the particular purpose of the Powerbeats headphones is identical to their ordinary use—listening to music. Apple is incorrect; Powerbeats' ability to resist sweat and moisture during exercise is a particular purpose that is distinct from the use of ordinary headphones. Under Apple's logic, a mountain boot and ballroom dancing shoe would not have distinguishable purposes because they are both used to cover one's feet. Indeed, Apple's logic contradicts the Uniform Commercial Code comment that animates California's Implied Warranty; Fitness for a Particular Purpose statute, California Commercial Code section 2315.[7] UCC Comment 2 to California Commercial Code section 2315 explains this difference:

> A "particular purpose" differs from the ordinary purpose for which the goods are used in that it **envisages a specific use by the buyer** which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question. For example, shoes are generally used for the purpose of walking upon ordinary ground, **but a seller may know that a particular pair was selected to be used for climbing mountains.**

Comment 2 (emphasis added). Similar to hiking boots that can withstand the rigor associated with climbing mountains, Powerbeats headphones are not just headphones, they were headphones that Apple, an electronics manufacturer and retailer, advertised as suitable for use *while sweating during exercise.* *See Lindberg v. Coutches*, 334 P.2d 701 (Cal. App. Dep't Super. Ct. 1959) (holding that seller breached the

---

[7] Plaintiffs also contend that their allegations are sufficient to satisfy Song Beverly Act implied warranty of fitness claims under Cal. Com. Code §1792.1. "The Song–Beverly Act incorporates the provisions of sections 2314 and 2315. It 'supplements, rather than supersedes, the provisions of the California Uniform Commercial Code' by broadening a consumer's remedies to include costs, attorney's fees, and civil penalties." *Am. Suzuki Motor Corp. v. Superior Court*, 44 Cal. Rptr. 2d 526, 528 (Cal. App. 1995), *as modified on denial of reh'g* (Sept. 21, 1995) (quoting *Krieger v. Nick Alexander Imports, Inc.* 285 Cal. Rptr. 717, 722 (Cal. App. 1991).).

implied warranty of fitness for a particular purpose where the seller's advertisements implied that the aircraft being sold was suitable for flight when in fact the sold aircraft was not). Use while exercising "envisages a specific use" by a Powerbeats buyer that is distinct from the ordinary use of headphones, e.g. listening to music while stationary in one's office or home.[8]

Apple argues that Plaintiffs' implied warranty for fitness for a particular purpose claims should be dismissed due to a lack of privity. While Apple is correct that California Commercial Code section 2315 generally requires vertical privity, Plaintiffs' purchases are exempt under the third-party beneficiary exemption: "'California cases permit a third party to bring an [implied warranty] action even though he is not specifically named as a beneficiary, if he is more than incidentally benefitted by the contract.' […] [T]he third-party beneficiary exception is viable under California law." *Bryde v. Gen. Motors, LLC*, 2016 WL 6804584, at *15–16 (N.D. Cal. Nov. 17, 2016) (citing *Gilbert Fin. Corp. v. Steelform Contracting Co.*, Cal. Rptr. 448, 450 (Cal. App. 1978)). Plaintiffs who are "intended consumers" for products sold through a "network of dealers" that serve as the agents of Apple and "plead[] that he or she is a third-party beneficiary to a contract that gives rise to the implied warranty of merchantability […] may assert a claim for the implied warranty's breach." *In re Toyota Motor Corp.*, 754 F. Supp. 2d at 1185.[9] Plaintiffs' purchases satisfy the requirements of the third-party beneficiary exception. Here, akin to *In re Toyota Motor Corp*, 754 F. Supp. 2d at 1184, Plaintiffs allege that "Apple contracted with retailers so that the retailers could sell Powerbeats to consumers. Apple intended that consumers would be the end users of Powerbeats and that consumers would be the beneficiaries of its contracts with retailers to sell Powerbeats to consumers." FAC ¶ 208.[10] All plaintiffs purchased their Powerbeats from retail stores—BestBuy,

---

[8] Defendant cites *Marcus*, 2015 WL 151489, at *9. However, there, Plaintiffs only alleged that the particular purpose of the laptop computers at issue was use as a "portable device," not that there was a specific environment or use that the laptops were suited to withstand. Here, in contrast, the Powerbeats are advertised as suitable to withstand environments synonymous with exercise that logically include heightened heat, humidity, sweat, moisture, and increased shock.

[9] Defendant relies upon *Azar v. Gateway Genomics, LLC*, 2017 WL 1479184, at *6 (S.D. Cal. Apr. 25, 2017) and *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1141 (C.D. Cal. 2005) to support their argument that notice is required, but neither case discusses the exceptions to the privity requirement that California law recognizes.

[10] *In re Sony Vaio Computer Notebook Trackpad Litig.*, 2010 WL 4262191, at *3 (S.D. Cal. Oct. 28, 2010) (holding plaintiffs sufficiently pled the third-party beneficiary exception to privity with defendant Sony where plaintiffs pled Sony and Best Buy entered an agreement permitting Best Buy to be Sony's retailer and where plaintiffs were the beneficiaries of that contract); *In re Cartwright v. Viking Industries, Inc.*, 249

Costco, the Home Shopping Network, T-Mobile, and Amazon.com. FAC ¶ 70, 76, 85, 98, 111, 121, 127, 136, 145. Each of these retailers entered into agreements with Apple so that Apple could sell Powerbeats *through* the retail businesses to consumers.

There is another exception that applies here. Namely, because the case is based on misrepresentations made on the manufacturer's labels and advertisements, privity is not required. *Bryde*, 2016 WL 6804584, at *16 ("The Ninth Circuit recognized that an exception to the privity requirement 'arises when the plaintiff relies on written labels or advertisements of a manufacturer.'") (quoting *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008)); *In re Rust-Oleum Restore Mktg., Sales Practices & Prod. Liab. Litig.*, 155 F. Supp. 3d at 806–07 (quoting *Clemens* and holding that allegations or reliance on manufacturer representations provides basis for "direct dealing" exception).

### 3. Implied Warranties of Merchantability and Fitness Claims Under Pennsylvania, Florida, Illinois, and Texas Law

Apple argues that Plaintiffs' claims for breach of the implied warranties of merchantability under Pennsylvania, Florida, Illinois, and Texas state law are insufficiently pleaded. Def. at 21. Apple asserts that Plaintiffs claims pursuant to Florida and Illinois state law fail because Plaintiffs lack vertical privity with Apple. Def. at 21. This is wrong. Under Florida law, "a person who is not a party to a contract can enforce the terms of the contract if 'the provisions of the contract primarily and directly benefit the third party or a class of persons of which the third party is a member." *Varner v. Domestic Corp.*, 2017 WL 3730618, at *12 (S.D. Fla. Feb. 7, 2017) (quoting *Greenacre Props., Inc. v. Rao*, 933 So. 2d 19, 23 (Fla. Dist. Ct. App. 2006)). And under Illinois law, "if a Magnuson-Moss written warranty . . . is given . . . the nonprivity 'consumer' should be permitted to maintain an action on an implied warranty against the 'warrantor.'" *Szajna*, 503 N.E.2d at 769.[11]

---

F.R.D. 351, 356 (E.D. Cal. 2008) (holding plaintiffs sufficiently pled the third-party beneficiary exception where they alleged that the manufacturer defendant sold the products to distributors and others "who were not intended to be the ultimate consumers" and where the agreements between defendant and intermediary buyers were "intended to benefit the [end-consumers]").

[11] Defendant also argues that Plaintiffs have failed to provide adequate pre-suit notice as required by Pennsylvania, Florida, Illinois, and Texas state law. Def.'s Mem. 21. As argued above, Plaintiffs have alleged facts that demonstrate that each Plaintiff has provided pre-suit notice to Defendant and has complied with each state's pre-suit notice requirements. *See supra* III.B; FAC ¶¶ 91-92, 104-06, 130-31, 140, 142, 149.

4.    **The Breach of Warranty Against Redhibitory Defects Claims Under Louisiana Law**

Apple next argues that Plaintiffs have failed to sufficiently plead their claim for breach of warranty against redhibitory defects under Louisiana law because Plaintiff Okorocha failed to give Apple pre-suit notice of his redhibition claim and because he supposedly failed to allege that Powerbeats' defect occurred during ordinary use. Def. at 21-22. Notably, Apple does not assert that no redhibitory defect exists or that such a defect did not exist at time of delivery; rather, Apple only argues that Plaintiff Okorocha's redhibition claim is not viable for lack of notice and insufficient proof that the defect occurred during ordinary use of the product. Both assertions are incorrect.

Shortly after Plaintiff Okorocha's Powerbeats product failed, Mr. Okorocha contacted Apple to inform them that his product had failed and to request a replacement. FAC ¶¶ 117-18. As with the other named Plaintiffs, this constitutes adequate notice. *See* La. Civ. Code Ann. art. 2522. Moreover, Plaintiff Okorocha, just as the other named Plaintiffs, has alleged sufficient facts to indicate that the defect in his Powerbeats products occurred during ordinary use. Powerbeats products were marketed as being water and sweat resistant and were shown in various advertising being used by professional athletes during rigorous physical exercise and other sport activities. FAC ¶¶ 86, 99-100, 102, 113-14, 122. Plaintiff Okorocha relied upon this marketing and purchased Powerbeats products because of their ability to withstand exercise and physical activity. *Id.* ¶¶ 115-16, 121. Through advertising and marketing, Apple represented that their products' ordinary use included use during physical activity. Plaintiff Okorocha used the products during exercise and other physical activity. *Id.* ¶ 116. The products' failures occurred during and as a result of their ordinary use. For these reasons, Plaintiffs have sufficiently pleaded facts to support their claim for breach of warranty against redhibitory defects under Louisiana law.

5.    **The Magnuson-Moss Warranty Act**

Apple argues that Plaintiffs' claims under the Magnuson-Moss Warranty Act ("MMWA") necessarily fail due to alleged failures to adequately plead state law warranty claims. Def. at 22. "Breach of an obligation imposed by state law will support a claim under the Magnuson-Moss Act." *In re Sony Grand Wega*, 758 F. Supp. 2d 1077, 1101 (S.D. Cal. 2010); *see Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (noting that MMWA claims "stand or fall" with "express and implied

warranty claims under state law"). So long as Plaintiffs state "plausible breach of express warranty claims . . . [or] a plausible implied warranty claim, these plaintiffs have stated plausible claims under the MMWA." *Garcia v. Chrysler Group LLC*, 127 F. Supp. 3d 212, 232 (S.D.N.Y. 2015). Because Plaintiffs state law express and implied warranty claims do not fail, *see supra*, their MMWA claim also does not fail.

Apple further argues that Plaintiffs' claims under MMWA must fail due to the number of named plaintiffs being less than one hundred as required by 15 U.S.C. § 2310(d)(3)(C). Def. at 22. Courts interpreting this particular statutory provision, however, have held that the requirement is satisfied when plaintiffs properly invoke jurisdiction under the Class Action Fairness Act ("CAFA"). *Keegan*, 838 F. Supp. 2d at 954. These cases hold that where the party invoking federal jurisdiction is able to meet his or her burden of proving jurisdiction under the CAFA, the absence of at least one hundred named plaintiffs does not prevent the plaintiff from asserting claims under the Magnuson-Moss Warranty Act. *Id.* Here, Plaintiffs have invoked jurisdiction under the CAFA. FAC ¶ 165. By invoking jurisdiction under the CAFA, Plaintiffs have satisfied the jurisdictional requirements of 15 U.S.C. § 2310(d)(3)(C), and thus their MMWA claim should not be dismissed for failure to meet the one hundred named plaintiff threshold.

## IV.  PLAINTIFFS HAVE STANDING

### A.  Plaintiffs Have Standing to Seek Injunctive Relief

Although Apple concedes that each Plaintiff alleged that, if Powerbeats functioned as advertised, and if Apple was enjoined from its deceptive advertising, they would purchase Powerbeats again in the future, Apple argues that their claim for injunctive relief should be dismissed because they do not allege "that they are currently seeking to purchase Powerbeats." Def. at 25. Apple's discussion of Plaintiffs' standing to seek injunctive relief is incredibly misleading, however, because it fails to address—or even cite—the Ninth Circuit's recent decision in *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1112-1116 (9th Cir. 2017). In *Davidson*, the Ninth Circuit resolved the district court split on the issue of standing in favor of plaintiffs seeking injunctive relief and found that a previously deceived consumer can have standing for future purchases. *Davidson*, 873 F.3d at 1116 (holding that Davidson "adequately alleged that she faces an imminent or actual threat of future harm due to Kimberly-Clark's false advertising" because "[s]hould Davidson encounter the denomination 'flushable' on a Kimberly–Clark wipes package

1    at the grocery store today, she could not rely on that representation with any confidence.") (internal

2    quotations omitted).

3              Here, Plaintiffs plausibly allege that they could not rely on the product's labeling in the future

4    with any confidence and so will not purchase Powerbeats without an injunction, although they would

5    like to. *See* FAC, ¶¶ 75, 84, 97, 110, 126, 144, 155. Plaintiffs further allege that they each would purchase

6    Powerbeats in the future if they could rely on the product's labeling:

7              If Powerbeats functioned as advertised, [Ivy] would purchase Powerbeats in the future. If the
             Court were to issue an injunction ordering Apple to comply with advertising and warranty laws,
8             [she] would likely purchase Powerbeats again in the near future. Indeed, [she] made multiple
             attempt to replace the Powerbeats headphones because she wanted a functioning pair that lived
9             up to Apple's representations.

10   *Id.* at ¶ 97. Thus, the threat of future harm in this case is Plaintiffs' "plausible allegations that she will be

11   unable to rely on the product's advertising or labeling in the future, and so will not purchase the product

12   although she would like to." *Davidson*, 873 F.3d 1115.

13             Additionally, Plaintiffs are also at risk of reasonably, but incorrectly, assuming that Apple fixed

14   the defect in its Powerbeats. *Davidson*, 873 F.3d 1115. Mr. Bizzelle's experience is instructive. After Mr.

15   Bizzelle made multiple attempts to replace his non-functioning Powerbeats 2 headphones he eventually

16   tossed them in the trash because they were useless. *See* FAC ¶¶ 127-134. When Apple released

17   Powerbeats 3, however, he "believed that Apple had fixed the defects and construction problems with

18   Powerbeats 2 headphones in the new generation of Powerbeats" and thus again "believed and relied on

19   Apple's representations that the Powerbeats 3 were sweat-resistant and had a battery that could last for

20   12 hours." *Id.* ¶¶ 135-136, 144. Thus, Mr. Bizzelle fell victim to Apple's false advertising a second time

21   because he reasonably, but incorrectly, believed that Apple had fixed the defects. *See id.*; *see also id.* ¶¶

22   120-126 (describing a similar repeat injury experienced by Mr. Okorocha who purchased Powerbeats 2 a

23   second time after his first pair ceased functioning). The risk of repeat injury resulting from a reasonable

24   but incorrect belief that a product has been improved exactly mirrors one of the grounds for seeking

25   injunctive relief that the Ninth Circuit described in *Davidson*. *See Davidson*, 873 F.3d at 1115 (explaining

26   that a threat of future harm could include "the consumer's plausible allegations that she might purchase

27   the product in the future, despite the fact it was once marred by false advertising or labeling, as she may

28

reasonably, but incorrectly, assume the product was improved"). In short, since *Davidson* controls, Plaintiff has standing to seek injunctive relief.

*Broomfield v. Craft Brew Alliance, Inc.*, 2017 WL 5665654, at *3-4 (N.D. Cal. Nov. 27, 2017) does not counsel in favor of a different result. In *Broomfield*, the plaintiffs alleged that they would purchase Kona beer if it were, in fact, brewed in Kona but did not allege any current desire to purchase Kona beer that was not brewed in Kona. In other words, in *Broomfield* the plaintiffs alleged no current desire to purchase Kona beer because they only alleged that they would purchase Kona beer if it were brewed in Hawaii—which they now knew it wasn't. Differently, here, each Plaintiff alleges that he or she would like a functioning pair of Powerbeats headphones, and that they would like to be able to rely on Apple's advertising in the future. *See* FAC, ¶¶ 75, 84, 97, 110, 126, 144, 155. Indeed, many of them also add to their allegations that they made several attempts to obtain a functioning pair of headphones that lived up to Apple's representations. *See id.* ¶¶ 75, 97, 110, 126, 144. As such, each Plaintiff adequately alleges a current desire for Powerbeats headphones. Moreover, unlike in *Broomfield* where the plaintiffs did not allege that they could later incorrectly but reasonably believe that Kona beer was brewed in Hawaii, here, Plaintiffs' allegations are sufficient to show that they are at risk for being deceived again in the future based on the reasonable, but wrong, belief that Apple improved Powerbeats by fixing its defects. *See Broomfield*, 2017 WL 5665654, at *4.

### B.   Plaintiffs Have Standing to Bring Claims Based on Sweat and Water Resistance Misrepresentations

Apple argues that Plaintiffs fail to plead a causal connection between their injury and any action by Apple. Specifically, Apple argues that "the FAC fails to allege that sweat or water caused Plaintiffs' Powerbeats 2 or 3 to stop working" and that no "plaintiff alleges that he or she exposed his or her Powerbeats to water." Def. at 17, 23. Apple's argument fails for several reasons. First, at the pleading stage, Plaintiffs need not present facts or extrinsic evidence showing that Apple's claims of water-resistance and battery life are false. *See Velasquez-Reyes*, 2017 WL 4082419, at *8 ("Samsung's insistence that she must present facts and extrinsic evidence showing its claims of water resistance are false misrepresents the pleading requirements of a false advertising claim."). Rather, it is enough that Plaintiffs allege that reasonable consumers are likely to be deceived. *See id.* at *9.

Second, Apple's argument fails as a factual matter. In addition to repeatedly alleging that Powerbeats do not withstand sweat, Plaintiffs also allege that an Apple customer service representative told at least one Plaintiff that he believed that sweat was damaging the headphones. *See, e.g.* FAC ¶ 131 ("At one point, when Mr. Bizzelle had received multiple Powerbeats 2 headphones which had broken, he asked an Apple customer service representative what was wrong with the headphones. Mr. Bizzelle remembers that the Apple representative explained that he believed that the issue was sweat damaging the Powerbeats."). Plaintiffs also explicitly allege that they used Powerbeats while engaged in exercise and a wide variety of activities. FAC ¶¶ 72, 79, 89, 102-104, 115-116, 129, 146. Although only one Plaintiff explicitly states that she sweated while exercising, it is reasonable to infer that Plaintiffs sweated while they engaged in the activities described in the complaint like running, cycling, weightlifting, powerwalking in humidity, using a Stairmaster aerobic exercise machine, mountain biking, and exercising at the gym. Accordingly, Plaintiffs' claims have facial plausibility because they have alleged sufficient facts to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Apple's citation to *Birdsong v. Apple Inc.*, 590 F.3d 955, 960-1 (9th Cir. 2009) is unavailing. In *Birdsong*, the plaintiffs alleged that, if headphones were used in an unsafe manner, unidentified users might be at risk for hearing loss. *See id.* ("The plaintiffs do not claim that they suffered or imminently will suffer hearing loss from their iPod use. The plaintiffs do not even claim that they used their iPods in a way that exposed them to the alleged risk of hearing loss. At most, the plaintiffs plead a potential risk of hearing loss not to themselves, but to other unidentified iPod users who might choose to use their iPods in an unsafe manner."). Conversely, here, all Plaintiffs allege that they suffered injury when Powerbeats broke and became unusable after use while doing a wide variety of exercise activities. Accordingly, unlike in *Bridsong*, Plaintiffs' injuries are concrete and particularized *as to themselves*.

## C. Plaintiffs Have Standing to Bring Claims with Respect to Powerbeats 3

Apple argues that Plaintiffs lack standing to bring claims on behalf of purchasers of Powerbeats 3 in Pennsylvania, Florida, Illinois, and Louisiana because Plaintiffs only purchased Powerbeats 2, and

not Powerbeats 3, in each of those states.[12] Def. at 23-24. To supports its argument that Powerbeats 2 purchasers cannot bring claims on behalf of Powerbeats 3 purchasers, Apple argues that "Courts in this Circuit employ two standards to determine whether a plaintiff may assert claims on behalf of a class for products she did not buy: a bright-line rule and a determination of whether products are 'substantially similar,'" but that Plaintiffs fail both tests. Def. at 24. As a preliminary matter, Apple's statement of the so-called "two standards" that courts in this Circuit employ is incorrect. As Apple knows—since it was on the losing end of this issue before—numerous courts have concluded that whether a plaintiff may bring claims on behalf of a purchasers of a similar product that she did not purchase is better taken at class certification under the lens of typicality or adequacy of representation, rather than standing. *See, e.g., Donohue v. Apple*, 871 F. Supp. 2d 913, 921-22 (N.D. Cal. 2012) (emphasizing that "representative parties who have a direct and substantial interest have standing; the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation"); *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 530 (C.D. Cal. 2011) ("District courts in California routinely hold that the issue of whether a class representative 'may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation.' Treatises and other circuits reach the same conclusion." (citations omitted)). Based on the foregoing persuasive authority, the issue of whether Plaintiffs who purchased Powerbeats 2 in Pennsylvania, Florida, Illinois, and Louisiana may represent purchasers of Powerbeats 3 in those states, should be addressed at class certification. *See, e.g., Donohue*, 871 F. Supp. 2d at 22 ("[T]he court concludes that Apple's arguments boil down to questions of whether common issues predominate and whether plaintiff can adequately represent absent class members, issues that are better resolved at the class certification stage.").

District courts in the Ninth Circuit that do not defer the issue to class certification hold that a plaintiff has standing to assert claims based on products the plaintiff did not purchase but that have

---

[12] Apple does not argue that Plaintiffs lack standing to bring claims on behalf of Powerbeats 3 purchasers under California and Texas laws because Plaintiff Zepeda and Plaintiff Bizelle purchased Powerbeats 3 in California, and Texas, respectively.

1    substantially similar marketing. *See, e.g.*, *Werdebaugh v. Blue Diamond Growers*, 2013 WL 5487236, at *13

2    (N.D. Cal. Oct. 2, 2013) (listing cases). For example, in *Anderson v. Jamba Juice Co.*, the court held that the

3    plaintiff, who purchased several flavors of at-home smoothie kids labeled "All Natural," had standing to

4    bring claims on behalf of purchasers of other flavors because the products were sufficiently similar in

5    that the "same alleged misrepresentation was on all of the smoothie kit[s] regardless of flavor." *Anderson*

6    *v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012); *see also Astiana v. Dreyer's Grand Ice Cream,*

7    *Inc.*, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012) (finding sufficient similarity where the plaintiffs

8    were "challenging the same basic mislabeling practice across different product flavors"). The focus of

9    the substantial similarity analysis is whether the *representations* made to consumers are substantially

10   similar—not whether the products have different ingredients or parts. *See id.*; *see also Miller v. Ghirardelli*

11   *Chocolate Co.*, 2013 WL 1402682, at * 8 (N.D. Cal. Apr. 5, 2013) ("Plaintiffs who do not purchase a

12   product nonetheless may have standing if the products and alleged misrepresentations were substantially

13   similar."). Thus, here, because Apple made the identical claim that Powerbeats are "Sweat and Water

14   Resistant" about Powerbeats 2 and 3 and substantially similar claims about the battery-life of

15   Powerbeats 2 and Powerbeats 3, there is sufficient similarity for Powerbeats 2 purchasers to represent

16   Powerbeats 3 purchasers. In addition, both products also suffer from the same defect: neither are sweat

17   and water resistant and neither have long lasting battery life. Thus, although persuasive authority teaches

18   that the issues related to products not purchased are better left for class certification, in either case,

19   Plaintiffs' claims on behalf of Powerbeats 3 purchasers in Pennsylvania, Florida, Illinois, and Louisiana

20   should proceed past a motion to dismiss.

21        Apple's assertion that the Court should follow some "bright-line rule" where no putative class

22   representative could represent purchasers of products from the same product line should be rejected

23   because the majority, and more persuasive and recent authority, counsels that, if the Court does not

24   defer the issue to class certification, the Court should find that Plaintiffs have standing to bring claims

25   on behalf of purchasers who were induced to buy other models of the product based on the same or

26   similar misrepresentations.  *See Donohue*, 871 F. Supp. 2d at 921-22 (rejecting Apple's argument that

27   more recent authority supports applying a bright line rule to deny standing to non-purchasers);

28

1   *Velasquez-Reyes*, 2017 WL 4082419, at \*8 (deferring the issue to class certification denying motion to

2   dismiss claims brought on behalf of purchasers of models of the phone that plaintiff did not purchase

3   because, *even though the plaintiff had not alleged the models were similar*, the complaint made clear "that

4   purchasers of all there models were induced to purchase through the same alleged misrepresentations

5   and false or misleading advertisements"). Indeed, in Apple's cited cases, the courts did not even consider

6   or address the issue of whether representations were substantially similar across product lines.[13]

7   Accordingly, if the Court does not defer the issue to class certification, the Court should follow later

8   persuasive authority developed in this District that concludes that plaintiffs have standing where the

9   injury suffered as a result of a misrepresentation is not meaningfully distinguishable from the injury of

10  an individual misled by the same misrepresentation on another model of the product. *See, e.g.*, FAC ¶¶

11  43-44 (identifying same or similar misrepresentations); *Werdebaugh*, 2013 WL 5487236, at \*13-14.

## V.    PLAINTIFFS HAVE STATED A CLAIM FOR NEGLIGENCE

13          Apple argues that Plaintiffs' claims for negligence should be dismissed because Plaintiffs did not

14  suffer any physical injury or damage to other property. Def. at 22. In claims for negligence, generally

15  liability is limited to damages for physical injury or damage to other property. *Kalitta Air, LLC v. Cent.*

16  *Tex. Airborne Sys.*, 315 F. App'x 603, 605 (9th Cir. 2008). Under California law, liability for negligence

17  requires: "(1) personal injury, (2) physical damage to property, (3) a 'special relationship' existing

18  between the parties, or (4) some other common law exception to the rule." *Id.* (citing *J'Aire Corp. v.*

19  *Gregory*, 598 P.2d 60, 62-63 (Cal. 1979)). A "special relationship" exists where there is proof of: (1) the

20  extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the

21  plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection

22  between the defendant's conduct and the injury suffered, (5) the moral blame attached to the

---

[13] In *Granfield v. NVIDIA Corp.*, 2012 WL 2847575, at \*6 (N.D. Cal. Jul. 11, 2012), the plaintiff attempted to bring claims of *eleven* additional computer models sold to a variety of computer manufactures and there was no indication that Plaintiff had relied on substantially similar representations that were made across all the computer models. *Johns v. Bayer Corp.*, 2010 WL 476688, at \*5 (S.D. Cal. Feb. 9, 2010) merely stands for the unremarkable proposition that statements made in a "long term advertising campaign" that the plaintiff never alleged he was exposed to were inactionable. *See also Madenlian Flax USA Inc.*, 2014 WL 7723578, at \*5-6 (C.D. Cal. Mar. 31, 2014) (following *Werdebaugh* and rejecting *Johns*).

defendant's conduct and (6) the policy of preventing future harm. *J'Aire Corp.*, 598 P.2d at 63. Plaintiffs have alleged each of these factors here.

The transaction—the sale of Powerbeats products to consumers, including Plaintiffs and Class Members—was targeted directly towards Plaintiffs and other consumers. Namely, Apple marketed, advertised, and sold Powerbeats products to consumers. FAC ¶ 2. The harm—particularly that Powerbeats products failed and did not perform as advertised—was foreseeable, given Apple's knowledge of the products and their inability to perform as advertised. *Id.* ¶ 183. Furthermore, as Plaintiffs have alleged specifically, each named Plaintiff purchased his or her Powerbeats product only to realize that it lacked the qualities advertised and failed to perform as marketed. *Id.* ¶¶ 58-91. Because Apple knew, or should have known, that its product failed to perform as marketed and advertised, and because Apple took no steps to improve the products to ensure they performed as advertised, Apple's conduct is closely connected to the economic loss Plaintiffs suffered. Because of its knowledge and subsequent inaction to remedy defects in the products, Apple bears high moral blame for failing to truthfully advertise and market the product's actual qualities. Lastly, the policies underlying this case affect future consumers—as any judgment against Apple here for their improper marketing tactics relating to their sub-par products has far-reaching implications on future producers. Should the Court permit Apple to be relieved of all negligence liability, as Apple requests, other product manufacturers and marketers are incentivized to continue employing similar tactics that harm consumers by tricking them to purchase other defective and sub-par products. Plaintiffs have alleged sufficient facts to offer proof of each of the factors required to demonstrate that Apple and Plaintiffs existed in a "special relationship" under California law. Accordingly, Plaintiffs' claims for negligence are well pleaded and remain viable.

## VI.   CONCLUSION

Plaintiffs request that the Court deny Apple's motion, or grant leave to amend.

1

Dated:  February 21, 2018                    Respectfully submitted,

2
                                             /s/ Hassan A. Zavareei
                                             Hassan A. Zavareei (CA Bar No. 181547)
3                                            Kyra A. Taylor (*pro hac vice* forthcoming)
                                             **TYCKO & ZAVAREEI LLP**
4                                            1828 L Street, NW, Suite 1000
                                             Washington, DC  20036
5                                            Telephone: (202) 973-0900
                                             Facsimile: (202) 973-0950
6                                            hzavareei@tzlegal.com
                                             ktaylor@tzlegal.com
7

8                                            Annick Persinger (CA Bar No. 272996)
                                             **TYCKO & ZAVAREEI LLP**
9                                            483 Ninth St, Suite 200
                                             Oakland, CA 94607
10                                           Telephone: (510) 254-6808
                                             Facsimile: (202) 973-0950
11                                           apersinger@tzlegal.com

12
                                             E. Powell Miller (*pro hac vice* forthcoming)
13                                           **THE MILLER LAW FIRM, P.C.**
                                             950 West University Drive, Suite 300
14                                           Rochester, Michigan 48307
                                             248.841.2200
15                                           248.652.2852 *facsimile*
                                             epm@miller.law
16

17                                           Greg F. Coleman (*pro hac vice* forthcoming)
                                             **GREG COLEMAN LAW**
18                                           First Tennessee Plaza
                                             800 S. Gay Street, Suite 1100
19                                           Knoxville, TN 37929
                                             (865) 247-0080
20                                           greg@gregcolemanlaw.com

21
                                             *Attorneys for Plaintiffs and the putative class*
22

23

24

25

26

27

28