UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DEONN MORGAN, et al.,

    Plaintiffs,

v.

APPLE INC.,

    Defendant.

Case No. 17-cv-05277-RS

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

## INTRODUCTION

Plaintiffs Deonn Morgan, Lydia Zepeda, Sophia Ivy, Kelly Okorocha, Jennifer Zielinksi, Christopher Bizzelle, and Dana Rodenbeck allege that defendant Apple Inc.'s ("Apple") Powerbeats 2 and 3 headphones malfunction and fail to hold a charge when used while sweating and exercising. They bring this suit on behalf of themselves and putative nationwide and state classes alleging violations of various state consumer protection statutes, breach of express and implied warranty, common law fraud, negligence, as well as violation of the Magnuson-Moss Warranty Act ("MMWA"), seeking damages and equitable relief including an injunction. Apple moves to dismiss all claims on numerous grounds. While many of those arguments do not succeed, plaintiffs' negligence claim is fatally deficient, and certain other claims must be amended in order to proceed. For the reasons stated below, Apple's Motion to Dismiss the First Amended Complaint ("FAC") is therefore granted in part and denied in part.

## BACKGROUND[1]

Apple acquired Beats Music and Beats Electronics, manufacturers of high-end headphones, in May 2014. Two products in the Apple/Beats line include Powerbeats 2, released in June 2014,

---

[1] The facts as averred in the FAC are assumed true for purposes of this motion to dismiss.

and Powerbeats 3, released in October 2016 (together, "Powerbeats"), both wireless Bluetooth headphones co-created by athlete LeBron James.

In conjunction with its marketing of the Powerbeats, Apple makes certain representations about each product. Both on the Apple and Beats website, as well as on product packaging, Apple represents Powerbeats 2 as having a "6 hour rechargeable battery" and Powerbeats 3 sporting "UP TO 12 HR BATTERY LIFE." FAC ¶¶ 43, 45–46. Apple also makes a "sweat and water resistance claim" on the packaging of both Powerbeats, as well as on both websites. *Id.* ¶¶ 44, 47. Likewise, both websites make several references to using Powerbeats while working out, including that "these water resistant earphones push you further and handle tough training," *id.* ¶ 47, "Sweat and water resistance to handle tough training," *id.* ¶ 48, and "Sweat and water resistance provides the necessary durability for strenuous workouts and weather," *id.* ¶ 49. Similar references also appear on the product packaging, which display images of athletes working out while wearing Powerbeats, and prominently display the battery life claims. Apple's television advertisements repeat similar claims, and show consumers and athletes such as LeBron James and Serena Williams wearing Powerbeats while surfing, spraying themselves with water, or "drenched in sweat" while working out. *Id.* ¶¶ 57–61. Powerbeats 2 explicitly states that it is designed "with you, the athlete, in mind." *Id.* ¶ 62.

Despite Apple's advertising and representations, Powerbeats have generated a "virtually unending stream of consumer complaints" because they are neither sweat proof nor do they have the battery life that is advertised. FAC ¶¶ 63–64. Named plaintiffs Jennifer Zielinski (Pennsylvania), Kelly Okorocha (Louisiana), Sophia Ivy (Florida), Lydia Zepeda (California), Deonn Morgan (California), Christopher Bizzelle (Texas), and Dana Rodenbeck (Illinois) have each purchased Powerbeats and had similar experiences in which the headphones began malfunctioning after ordinary use.

Morgan, for example, alleges that she saw commercials for Powerbeats featuring LeBron James using the headphones while engaging in rigorous exercise, and went to a Best Buy store in California in May 2016. The product packaging stated that the Powerbeats 2 headphones were

"sweat & water resistant," "built to endure," and could be used for hours without recharging. FAC ¶ 71. She purchased the headphones for $139.99 for her teenage son in reliance on those representations, but they became unusable in or around November 2016. While Apple sent her a replacement pair, those too "began to malfunction soon after receipt and normal use." *Id.* Had she known of Powerbeats' failure to hold a charge and battery defects, or that they were not sweat or water resistant, she would not have purchased them or would have paid significantly less for them.

Bizzelle alleges that he purchased Powerbeats 2 for $139.99 at a Best Buy store in Texas on January 21, 2016. In making his purchase, he relied on representations on the product's packaging, including that Powerbeats 2 are sweat-resistant and have a 6 hour battery life, and saw an image of Lebron James "glistening with sweat on either side of the Powerbeats 2 box, which furthered his belief that they would be sweat and water resistant." FAC ¶ 128. He used his Powerbeats 2 headphones as directed, but by May 2016, they "would not take a charge and would not turn on." *Id.* ¶ 130. He contacted Apple and received a pair of replacement headphones that broke again within weeks. He received more than five replacement headphones, but each broke in the same way: "failing to charge and eventually failing to turn on." *Id.* An Apple customer service representative explained that he believed the issue was "sweat damaging the Powerbeats." *Id.* ¶ 131. When Apple released Powerbeats 3, Bizzelle saw them on sale at Costco, saw that the battery life lasted up to 12 hours and that they were sweat and water resistant, and purchased them for $129.99 on December 1, 2017. By June 2017, the Powerbeats 3 headphones also "would not take a charge and would not turn on." *Id.* ¶ 139. Bizzelle received a replacement from Costco which failed, and another replacement from Apple. The other named plaintiffs each recount similar stories in which their Powerbeats failed after being used while exercising as directed, and the replacements were no improvement (or were denied by Apple altogether).

## LEGAL STANDARD

Under Federal Rule of Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Claims sounding in fraud or mistake are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that such claims "state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b), including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks and citation omitted). "The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.* The allegations of fraud "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

If the court dismisses a complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

# DISCUSSION

I. FAILURE TO STATE A CLAIM

Apple first moves to dismiss plaintiffs' fraud-based claims under the various consumer protection statues[2] and common law fraud principles pursuant to Rule 9(b) because plaintiffs fail to allege any actionable misrepresentation or reliance with sufficient particularity. Apple argues that plaintiffs' allegations are insufficient with respect to their sweat and water resistant claims, battery life claims, and durability claims. Plaintiffs contend that Apple's misrepresentations with respect to each of these claims are actionable, and that they have sufficiently pled all elements of their fraud-based claims.

### A. Apple's Alleged Misrepresentations Regarding Sweat and Water Resistance and Battery Life

With respect to the alleged misrepresentations, plaintiffs take issue with Apple's statements that Powerbeats are "sweat & water resistant" and "BUILT TO ENDURE," and have certain battery lives. Apple argues that these statements are not actionable because they would not mislead a reasonable consumer, and even if they are, plaintiffs do not make sufficiently particularized allegations to plead a claim.

Plaintiffs' claims are governed by the "reasonable consumer" test, which requires that they "show that members of the public are likely to be deceived." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *see also Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. Dist. Ct. App. 2000) (Under FDUTPA, "the question is . . . whether the practice was likely to deceive a consumer acting reasonably in the same circumstances."); *Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 418 (E.D. Pa. 2016) (PUTPCPL requires showing "conduct that is likely to deceive a consumer acting reasonable under similar circumstances"); *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 756–59 (N.D. Ill. 2015) (applying reasonable consumer test to ICFA claim). While

---

[2] The California Unfair Competition Law ("UCL"), Consumer Legal Remedies Act ("CLRA"), Florida Deceptive and Unfair Trade Practices Act ("FDUPTA"), Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL"), and Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA").

this is "usually a question of fact not appropriate for decision on" a motion to dismiss, "[d]ecisions granting motions to dismiss claims under the Unfair Competition Law have occasionally been upheld." *Williams*, 552 F.3d at 938.

In *Williams*, the Ninth Circuit reversed the district court and held that the defendant's product, "Fruit Juice Snacks," could deceive a reasonable consumer because of the use of the words "'Fruit Juice' juxtaposed alongside images of fruits such as oranges, peaches, strawberries, and cherries," when the product actually only contained white grape juice from concentrate. *Williams*, 552 F.3d at 936, 939–40; *see also Velasquez-Reyes v. Samsung Elecs. Am., Inc.*, o. CV 16-1953-DMG, 2017 WL 4082419, at *3, *9–10 (C.D. Cal. Sept. 13, 2017) (denying dismissal where phone ads claimed water resistance "in up to five feet of water for up to 30 minutes" and plaintiff alleged phone stopped working after being dropped in toilet for 10 seconds). On the contrary, claims involving "vague and subjective" statements that are not "specific and measurable" are mere "puffery" and are not actionable as a matter of law. *See Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999); *see also Tomek v. Apple Inc.*, No. 2:11-cv-02700, 2013 WL 3872774, at *4, *5 n.7 (E.D. Cal. July 25, 2013) (dismissing claims based on statements that laptop was "up to twice as fast of their top-of-the-line predecessors" and battery life lasted "up to 7 hours on a single charge" due to caveats that "[b]attery life and charge cycles vary by use and settings").

Turning to the statements at issue here, Apple fails to show that any of the statements identified by plaintiffs are so unreasonable that they must be dismissed as a matter of law. Apple's statements that Powerbeats are "sweat & water resistant" and "BUILT TO ENDURE," taken together, are actionable statements that plausibly constitute misrepresentations capable of misleading a reasonable consumer. *See In re Rust-Oleum Restore Mktg, Sales Practices and Prods. Liability Litig.*, 155 F. Supp. 3d 772, 818 (N.D. Ill. 2016) (finding manufacturer's representations that product provided "tough," "resilient," and "durable" coating that offers "superior weather resistance," "ultimate water repellency" and "lasting moisture protection," taken together, "d[id] not constitute mere puffery as they convey[ed] information on which a consumer

of ordinary prudence and comprehension may rely upon"). Plaintiffs do not allege that they expect Powerbeats to be waterproof or capable of being submerged under water, but instead allege that Apple's advertising shows famous professional athletes such as LeBron James and Serena Williams exercising "drenched in sweat, using their Powerbeats." FAC ¶ 61. This marketing material, along with Apple's marketing of Powerbeats as "sweat & water resistant" and "BUILT TO ENDURE," certainly signals to consumers that the headphones can withstand the sweat associated with exercise. *See also id.* ¶ 62 ("designed with . . . the athlete in mind").

With respect to battery life, plaintiffs allege "Apple represents on the Apple and Beats websites, as well as on product packaging, that the Powerbeats 2 has a '6 hour rechargeable battery' and that Powerbeats 3 has 'UP TO 12 HR BATTERY LIFE.'" FAC ¶ 43. Multiple courts, including those in this district, have held that "up to" statements can mislead reasonable consumers. *See, e.g.*, *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1172–73 (E.D. Cal. 2013) (finding "up to" battery life statement actionable because product was not accompanied by any disclosures and plaintiff alleged all laptops had battery life substantially less than that represented); *Walter v. Hughes Comm'cns, Inc.*, 682 F. Supp. 2d 1031, 1043 (N.D. Cal. 2010) (denying motion to dismiss based on allegations that plaintiff "was unable to experience the speeds that [defendant] had advertised its service as reaching 'up to,' even during non-peak hours"); *Frenzel v. Aliphcom*, No. 14-cv-03587-WHO, 2015 WL 4110811, at *11 (N.D. Cal. July 7, 2015) (finding "up to" 10 days battery life statement actionable where plaintiff alleged actual battery life was only "a few hours or a day"). Given that Apple's statement with respect to Powerbeats 2 does not even contain the "up to" qualifier, that statement is certainly actionable.

On the other hand, Apple argues that even if these statements are actionable, plaintiffs nonetheless fail to plead their claims with sufficient particularity because they do not connect their use of the products while exercising to the products' diminished battery life or performance. For example, Jennifer Zielinski alleges that she "used her Powerbeats as directed and often while exercising." FAC ¶ 103. "Within approximately 3 weeks of purchase, after Ms. Zielinksi finished exercising and sweating on a Stairmaster aerobic exercise machine, Ms. Zielinksi discovered that

her Powerbeats 2 headphones would not retain a charge and would not turn on." *Id.* ¶ 104. Given Rule 9(b), however, Zielinski and all plaintiffs must specifically allege that the reason their headphones stopped working and failed to retain a charge was specifically due to Powerbeats' failure to resist sweat or water. Indeed, the other named plaintiffs fail to allege that they even sweated during exercise. For this reason, plaintiffs' claims[3] based on sweat and water resistance must be dismissed but with leave to amend.

Plaintiffs' averments regarding battery life, on the other hand, are sufficiently specific to put defendants on notice. Plaintiffs allege that after a certain amount of time, the Powerbeats "fail[ed] to hold a charge," FAC ¶ 73; *see also id.* ¶¶ 80, 90, 104, 117, 130, 139, 148, 150, 152. Such a failure (or plaintiffs' averments that the batteries would not even last for an hour-long workout) obviously fall short of the products' 6 or 12-hour battery life claims. While more specific allegations would only serve to strengthen plaintiffs' claims, their averments are sufficient at least at this stage.

B. Plaintiffs' Averments Regarding Reliance

Apple moves to dismiss plaintiffs' fraud based claims on the basis that they do not plead with particularity what statements they found material when purchasing Powerbeats. Those arguments are not persuasive. In addition to the general averments, which identify and quote each specific misrepresentation at issue, as well as include specific advertisements by Apple, each plaintiff explicitly states what misrepresentations he or she saw either on the product's packaging, on web advertising, or on commercial advertising, that induced her to purchase the product. These averments are sufficient to allege reliance and Counts XII through XVII therefore may proceed.

C. Plaintiffs' Averments Regarding Apple's Knowledge

With respect to plaintiffs' CLRA claim in Count XII only, Apple contends that plaintiffs do not adequately plead Apple had knowledge of the purported defect. Plaintiffs' FAC alleges

---

[3] This includes all of Counts I through XVIII to the extent that they are based on representations of sweat and water resistance.

that on Apple's website from March 23, 2016, Powerbeats 2 headphones received an average of 2 out of 5 stars based on 589 consumers' reviews, and that many of those reviews complain about the failure to hold a charge and battery defects. Powerbeats 3 receive an average of 1.5 out of 5 stars, based on 676 reviews, and several reviews complain that they "are not sweat resistant and contain a defect causing them to fail to retain a charge." FAC ¶ 67. On Beats' website, Powerbeats 3 receive an average rating of 2.02 out of 5 and reviews contain similar complaints. Plaintiffs rely on an editorial review from CNET.com that also mentions numerous consumer complaints regarding durability. Finally, plaintiffs aver that Apple "continuously received broken headphones from consumers, often several times from individual consumers." *Id.* ¶ 305. Based on this "constant stream of returned Powerbeats," "Apple knew or should reasonably have known, of the defect because, in the normal course of business, Apple tracks headphones returned under its warranty and the complaints related to those problems." *Id.*

Plaintiffs' factual averments regarding the numerous consumer complaints and an editorial review are sufficient to raise a question of fact regarding Apple's knowledge. While the Ninth Circuit has recognized "[s]ome courts have expressed doubt that customer complaints in and of themselves adequately support an inference that a manufacturer was aware of a defect," *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012), that case involved only fourteen consumer complaints, twelve of which were undated. Here, plaintiffs have identified hundreds of poor reviews of Apple's product as well as an editorial that identify the alleged defect as a problem. The reviews are dated, and plaintiffs allege that they existed prior to the relevant times of sale. Because plaintiffs' averments involve not only Powerbeats 2 but also Powerbeats 3, the next generation version of the same product, it is highly plausible that Apple would have knowledge of the complaints and negative reviews of the Powerbeats 2 product. Moreover, plaintiffs allege that Apple continuously received broken headphones from consumers and had to replace them under the warranty, which Apple tracked. These allegations distinguish the present case from those in which courts have granted dismissal on the pleadings. Given that documents and materials speaking to Apple's knowledge would likely be in the exclusive control of Apple at

this stage, these factual averments are sufficient to survive dismissal and entitle them to proceed to discovery.

## II. EXPRESS WARRANTY CLAIMS

Apple moves to dismiss plaintiffs' express warranty claims on the grounds that their warranty does not cover design defects, and that even if it does, they do not and cannot allege Apple breached it. Plaintiffs contend that they allege manufacturing defects as well as design defects, and that they adequately state claims based on Apple's express statements.

### A. Apple's One-Year Limited Warranty

With respect to Apple's one-year limited warranty, which covers "defects in material and workmanship," FAC ¶ 176, plaintiffs do not dispute that design defects would not fall within its terms. Instead, they argue that they also allege manufacturing defects based on poor workmanship and substandard materials. *See, e.g.*, *id.* ¶ 27(b) ("Whether the Powerbeats are defectively designed and/or manufactured"); *id.* ¶ 65 ("The Powerbeats contain a common design defect, manufacturing defect and/or are shoddily constructed with poor materials . . . .").

Under California law, design and manufacturing defects bear important distinctions. "A defect in the manufacture of a product exists if the product differs from the manufacturer's intended result or if the product differs from apparently identical products from the same manufacturer." Cal. Jury Instr. (BAJI) No. 9.00.3. The classic example of a manufacturing defect is "the one soda bottle in ten thousand that explodes without explanation." *Id.* at 428 (citing *Escola v. Coca Cola Bottling Co.*, 24 Cal. 2d 453, (1944)). In contrast, a product is defective in design "if it fails to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner," or "if there is a risk of danger inherent in the design which outweighs the benefits of that design." BAJI No. 9.00.5. Unlike a manufacturing defect, a design defect "cannot be identified simply by comparing the injury-producing product with the manufacturer's plans or with other units of the same product line, since by definition the plans and all such units will reflect the same design." *Barker*, 20 Cal.3d at 429.

Plaintiffs' averments currently allege facts supporting a defect in design only, not a

manufacturing defect. Plaintiffs allege that Powerbeats failed to perform as expected when used in an intended manner, such as exercising, and that replacements of their Powerbeats did them no good because they all reflected the same defect. These allegations fall within the definition of a design defect. While Sophia Ivy claims that she "received Powerbeats 2 replacements where the plastic ear piece snapped off during normal use," FAC ¶ 92, allegations that could support a manufacturing defect, her claims are not based off of this defect but rather that the Powerbeats and their replacements "continued to fail to charge or would fail to turn on," after she used them while exercising, *id.* Thus, plaintiffs' claims based on Apple's one-year warranty in Counts II and III are dismissed, but with leave to amend.

### B. "Sweat & Water Resistant" and Battery Life Warranties

Similar to the argument that the alleged statements are not actionable under a fraud-based theory, Apple also argues plaintiffs' claims based on Apple's statements that Powerbeats are "sweat & water resistant" and have certain battery lives may not proceed because they are not specific enough to create express warranties. For the same reasons outlined above, Apple's argument fails. Its claim that Powerbeats are "sweat & water resistant" is specific enough to create an express warranty," as are its representations regarding battery life.

### C. Privity Under Florida, Illinois, and Texas Law

Apple moves to dismiss each of plaintiffs' express warranty claims under Florida, Illinois, and Texas law on the grounds that they each require privity of contract. Courts applying both Florida and Texas law have allowed cases to proceed in the absence of privity. *See, e.g.*, *Smith v. Wm. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336, 1342, 1343 (S.D. Fla. 2009) (concluding that no privity was required because a "middle man" was not expected to have expertise regarding the manufacturer's product, express warranty was contained on packaging of product, and plaintiff relied on warranty in making purchase); *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1389 (S.D. Fla. 2014) (agreeing with the analysis in *Smith* and allowing express warranty claim to proceed without privity); *U.S. Tire-Tech, Inc. v. Boeran, B.V.*, 110 S.W. 3d 198, 194 (Tex. Ct. App. 2003) (Texas courts have "h[e]ld that privity of contract is not required in order to sustain a breach of

ORDER REGARDING MOTION TO DISMISS
CASE NO. 17-cv-05277-RS
11

express-warranty claim for purely economic losses."); *PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W. 3d 79, 90 (Tex. 2004) ("Of course, if manufacturers make representations or warranties directly to consumers, the latter may sue directly (despite the absence of privity) for breach of express warranty."). Because neither Florida nor Texas requires privity in express warranty claims, plaintiffs' claims based on these laws in Count III and IV survive.

The general rule in Illinois, however, appears to be that privity is still required for express warranty claims. *See Canadian Pac. Ry. Co. v. Williams-Hayward Protective Coatings, Inc.*, No. 02 C 8800, 2005 WL 782698, at *15 (N.D. Ill. Apr. 6, 2005) ("In general, because an express warranty is a 'creature of contract,' a party must have privity to the contract before bringing a breach of express warranty claim."). Plaintiffs' claim for express warranty based on Illinois law in Count III is therefore dismissed with leave to amend.

III.  IMPLIED WARRANTY CLAIMS

    A.  Song-Beverly Consumer Warranty Act—Implied Warranty of Merchantability Claim

Apple moves to dismiss plaintiffs' Song-Beverly Consumer Warranty Act claims based on the implied warranty of merchantability on the grounds that (1) Apple replaced the allegedly malfunctioning headphones and (2) plaintiffs cannot maintain a nationwide class claim. Regarding the nationwide class allegations, plaintiffs argue that this question should be deferred to the class certification stage. While a question remains if two California plaintiffs can represent a nationwide class based on a California statute, this issue is more appropriate for resolution at the class certification stage and thus will be deferred until then.

With respect to the substance of the Song-Beverly claims, plaintiffs' averments are adequate. Both plaintiffs Morgan and Zepeda allege ordinary or expected use of Powerbeats, including while exercising, as explicitly advertised by Apple. Both plaintiffs aver that the products ceased functioning within a relatively short amount of time. Furthermore, Apple's replacement of Morgan's headphones allegedly failed to cure the issue, as Morgan avers that her replacement pair stopped working and was therefore unmerchantable. For these reasons,

plaintiffs' Song-Beverly Act claims survive.

B. <u>Implied Warranty of Fitness Claim</u>

Apple moves to dismiss the implied warranty claims under California, Florida, and Illinois law on the grounds that plaintiffs do not plead privity of contract and cannot meet the third-party beneficiary exceptions to privity that each state requires. California and Florida, both recognize the third-party beneficiary exception to privity and Apple does not contend otherwise. *See, e.g.*, Cal. Civ. Code § 1559 ("A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."); *Schauer v. Mandarin Gems of California, Inc.*, 125 Cal. App. 4th 949, 957 (2005) ("Because third party beneficiary status is a matter of contract interpretation, a person seeking to enforce a contract as a third party beneficiary must plead a contract which was made expressly for his [or her] benefit and one in which it clearly appears that he [or she] was a beneficiary.") (internal quotation marks omitted); *Varner v. Domestic Corp.*, No. , 2017 WL 3730618, at *12 (S.D. Fla. Feb. 7, 2017) ("Florida law [] recognizes that, in some situations, a person who is not a party to a contract can enforce the terms of the contract if 'the provisions of the contract primarily and directly benefit the third party or a class of persons of which the third party is a member.'") (citing *Greenacre Props., Inc. v. Rao*, 933 So. 2d 19, 23 (Fla. 2d Dist Ct. App. 2006); *Weimar v. Yacht Club Point Estates, Inc.*, 223 So. 2d 100, 102 (Fla. 4th Dist. Ct. App. 1969)). While Illinois law is less clear, some courts have recognized a third party beneficiary exception to privity under Illinois law as well. *See In re Rust-Oleum*, 155 F. Supp. 3d at 806–07; *Elward v. Electrolux Home Prods., Inc.*, 214 F. Supp. 3d 701, 706 (N.D. Ill. 2016).

Plaintiffs' FAC alleges that "Apple contracted with retailers so that the retailers could sell Powerbeats to consumers. Apple intended that consumers would be the end users of Powerbeats and that consumers would be the beneficiaries of its contracts with retailers to sell Powerbeats to consumers." FAC ¶ 208. While these averments are somewhat bare, at this stage, they are sufficient to allege that plaintiffs benefit from third-party beneficiary status of Apple's contracts with its direct buyers. Because plaintiffs are unlikely to have access to the contracts between

Apple and its retailers and therefore would not know their specific terms, these factual allegations suffice at this stage.

Apple also moves to dismiss plaintiffs' implied warranty of fitness claim under each state's laws on the grounds that plaintiffs do not allege Powerbeats are unfit for their ordinary purpose, which Apple alleges is only for listening to music. Based on Apple's advertising and written statements, as discussed above, this argument has no merit. Again, however, to proceed plaintiffs will need to amend their complaint, if they have a good faith basis to do so, to connect their use of the headphones while exercising to the issues they experienced, as discussed above.

### C. Pre-Suit Notice

Apple moves to dismiss both the express and implied warranty claims under each state's law based on lack of pre-suit notice. Each plaintiff alleges, however, that he or she complained directly to Apple when the Powerbeats failed and requested replacements, sometimes several times over, under the warranties. Moreover, plaintiffs aver that Apple had knowledge of the defects at issue. These allegations are sufficient. *See, e.g.*, *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1143 (N.D. Cal. 2010); *Bietsch v. Sergeant's Pet Care Prods., Inc.*, No. 15 C 5432, 2016 WL 1011512, at *7 (N.D. Ill. Mar. 15, 2016); *Incubadora Mexicana, SA de CV v. Zoetis, Inc.*, 310 F.R.D. 166, 174 (E.D. Pa. 2015); *see also In re Rust-Oleum*, 155 F. Supp. 3d at 799–802 (concluding that allegations regarding notice were sufficient and more exhaustive review of factual sufficiency under each applicable state law inappropriate at motion to dismiss stage).

## IV. MAGNUSON-MOSS WARRANTY ACT CLAIMS

Apple contends and plaintiffs do not dispute that the MMWA claims rise or fall with their state law warranty claims, which have already been addressed. Because the vast majority of their state law warranty claims survive, the MMWA claims are treated accordingly. While Apple initially argues that plaintiffs' MMWA claims fail for the separate reason that they lack at least 100 named plaintiffs, the MMWA's requirements are satisfied as plaintiffs have invoked jurisdiction under the Class Action Fairness Act. *See Keegan v. Am. Honda Motor Co., Inc.*, 838 F. Supp. 2d 929, 954 (C.D. Cal. 2012) ("These cases hold that where the party invoking federal

jurisdiction is able to meet his or her burden of proving jurisdiction under CAFA, the absence of at least one hundred named plaintiffs does not prevent the plaintiff from asserting claims under the Magnuson–Moss Warranty Act."). Plaintiffs' MMWA claims thus may proceed consistent with their state law claims.

## V. NEGLIGENCE CLAIM

Apple moves to dismiss plaintiffs' negligence claim on the grounds that California law does not permit a plaintiff to assert a negligence liability theory against the manufacturer of a product where the plaintiff has suffered only economic loss. *See Jimenez v. Sup. Ct.*, 29 Cal. 4th 473, 483 (2002) ("[T]he economic loss rule allows a plaintiff to recover in strict products liability [or negligence] in tort when a product defect causes damage to 'other property,' that is, property *other than the product itself*. The law of contractual warranty governs damage to the product itself.") (emphasis in original). Plaintiffs respond that liability for negligence may lie where a "special relationship" arises. *See J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 804 (1979) ("Where a special relationship exists between the parties, a plaintiff may recover for loss of expected economic advantage through the negligent performance of a contract although the parties were not in contractual privity.").

Plaintiffs misapply the special relationship doctrine. "A 'special relationship' permitting recovery for purely economic loss exists between a manufacturer and a commercial consumer, where the manufacturer knew the product was destined for a *particular* consumer and for a *particular* use." *Elsayed v. Maserati N. Am., Inc.*, 215 F. Supp. 3d 949, 963–64 (C.D. Cal. 2016) (citing 50A Cal. Jur. 3d Products Liability § 25). Courts routinely reject negligence theories proceeding on the special relationship doctrine in situations such as this where a plaintiff fails to allege, nor could it, that the manufacturer marketed a product with the specific plaintiff in mind rather than the general public. *See, e.g., id.* at 964 ("Were the rule to merely require foreseeable use by *any* consumer, the special relationship exception to the economic loss doctrine would swallow the rule. Without Maserati customizing the Ghibli for Plaintiff and his son, the Court cannot find foreseeability of harm."); *In re Sony Gaming Networks and Customer Data Security*

ORDER REGARDING MOTION TO DISMISS
CASE NO. 17-cv-05277-RS
15

*Breach Litig.*, 996 F. Supp. 2d 942, 969 (S.D. Cal. 2014) ("Plaintiffs have failed to allege a 'special relationship' with Sony beyond those envisioned in everyday consumer transactions, and therefore, negligence is the wrong legal theory on which to pursue recovery for Plaintiffs' economic losses."); *NuCal Foods, Inc. v. Quality Egg LLC*, 918 F. Supp. 2d 1023, 1031 (E.D. Cal. 2013) ("Those [allegations] do not demonstrate that defendant's sale of eggs were intended peculiarly to affect plaintiff as opposed to all other purchasers similarly situated."). For these reasons, plaintiffs' negligence claim must be dismissed without leave to amend.

## VI. ARTICLE III STANDING

### A. Standing With Respect to "Sweat & Water Resistant" Statement

Similar to the arguments above, Apple moves to dismiss plaintiffs' claims based on the "sweat & water resistant" statement because plaintiffs do not draw a causal connection between any sweat or water and their Powerbeats' malfunctioning, as is required for Article III standing. As already discussed, plaintiffs are granted leave to amend explicitly to establish such a causal link if they can do so.

### B. Standing With Respect to Powerbeats 3

Apple argues that those plaintiffs who only purchase Powerbeats 2 lack standing to bring claims based on Powerbeats 3 in Pennsylvania, Florida, Illinois, and Louisiana. Plaintiffs respond that this question goes to class certification rather than to standing, but even if assessed under that later concept, passes muster as the products are substantially similar.

Plaintiffs' position is more persuasive. "[A] plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012). Depending on the factual circumstances, the question of "substantial similarity" "boil[s] down to questions of whether common issues predominate and whether plaintiff can adequately represent absent class members, issues that are better resolved at the class certification stage." *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 922 (N.D. Cal. 2012).

Given the similarities in marketing and defects alleged here, plaintiffs have adequately

ORDER REGARDING MOTION TO DISMISS
CASE NO. 17-cv-05277-RS

16

alleged that Powerbeats 2 and 3 are substantially similar such that plaintiffs have standing to bring claims based on both products. Powerbeats 3 is the next generation version of Powerbeats 2, and the alleged misrepresentations at issue are identical with respect to the "sweat & water resistant" statement, and substantially similar with respect to battery life. These allegations are sufficient at this stage to establish substantial similarity. Apple is free to raise the issue again at class certification upon a showing that the marketing and/or defects with each product are so different that plaintiffs cannot establish predominance or adequacy.

### C. Standing to Seek Injunctive Relief

Finally, Apple argues that plaintiffs lack standing to seek injunctive relief because they do not suffer any imminent harm and have not pled any current desire to purchase the product again. The Ninth Circuit addressed this very issue in *Davidson v. Kimberly-Clark Corp.*:

> We hold that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an "actual and imminent, not conjectural or hypothetical" threat of future harm. *Summers*, 555 U.S. at 493, 129 S.Ct. 1142. Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to.

873 F.3d 1103, 1115 (9th Cir. 2017).

Here, plaintiffs' allegations are sufficient to establish imminent harm based on their inability to rely on Powerbeats' advertising or labeling in the future. For example, Deonn Morgan alleges, "If Powerbeats functioned as advertised, Ms. Morgan would purchase Powerbeats in the future. If the Court were to issue an injunction ordering Apple to comply with advertising and warranty laws, Plaintiff would likely purchase Powerbeats again in the near future. Indeed, Ms. Morgan attempted to replace the Powerbeats headphones because she wanted a functioning pair that lived up to Defendant's representations." FAC ¶ 75. Each plaintiff makes similar allegations.

Not only have plaintiffs established an inability to rely on Powerbeats' advertising, but several have actually averred that they replaced and/or purchased the product multiple times,

believing that the defects would be fixed. Zielinski alleges that she received "multiple additional replacement Powerbeats 2 headphones," FAC ¶ 106, Okorocha purchased a second pair of Powerbeats 2 headphones, and Bizzelle had "over 5 pairs of Powerbeats 2 headphones" that broke as well as Powerbeats 3 headphones that were replaced at least twice, *id.* ¶¶ 132, 140, 142. Indeed, it is difficult to imagine what more Apple expects plaintiffs to allege in order to establish that that they have lost faith in their ability to rely on Powerbeats' marketing. For these reasons, plaintiffs may seek injunctive relief.

## CONCLUSION

For the foregoing reasons, Apple's Motion to Dismiss the First Amended Complaint is granted in part and denied in part. Plaintiffs shall file any amended complaint consistent with this Order within 20 days.

**IT IS SO ORDERED**.

Dated: May 16, 2018

_____
RICHARD SEEBORG
United States District Judge

ORDER REGARDING MOTION TO DISMISS
CASE NO. 17-cv-05277-RS
18